THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHESTER G. WHITFIELD, JR., Defendant-Appellant.

Fourth District   No. 4—86—0051

Opinion filed September 15, 1986.

Daniel D. Yuhas and Jonathan Haile, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn Klingler, all of State's Attorneys Appellate Prosecutor, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On November 28, 1984, the defendant, Chester G. Whitfield, Jr., pleaded guilty to a charge of violation of an Illinois Domestic Violence

Act (Ill. Rev. Stat. 1983, ch. 40, par. 2301—1 *et seq.*) order of protection and was sentenced to conditional discharge for a period of 12 months. On October 28, 1985, the State filed a petition to revoke defendant's conditional discharge alleging that the defendant had harassed his ex-wife in violation of the order. The circuit court of Champaign County, after hearing evidence on the petition, revoked defendant's conditional discharge and sentenced him to 12 months' probation conditioned on 60 hours of public service work and 2 days' imprisonment.

Defendant appeals the order of the circuit court alleging two grounds for reversal. First, defendant maintains that his conduct of following his ex-wife in his automobile did not constitute harassment in violation of the Domestic Violence Act order of protection. Next, defendant asserts that provisions of the Illinois Domestic Violence Act which criminalize conduct which constitutes "harassing" are unconstitutionally vague in violation of the fourteenth amendment to the United States Constitution.

On November 28, 1984, the defendant pleaded guilty to violation of an order of protection and was subsequently sentenced to conditional discharge for a period of 12 months. On October 29, 1985, the State filed a petition to revoke conditional discharge alleging that defendant had again violated the Domestic Violence Act order of protection. The petition specifically alleged that defendant had harassed his ex-wife, Susan M. Gray, by following her in his automobile.

On December 3, 1985, a hearing was held on the State's petition. Gray testified that she was employed at the Carle Clinic in Urbana and that on August 14, 1985, at approximately 5:10 p.m. she left the clinic with a co-worker, Mary Carolyn Marlette, to go home. The two women were in Marlette's automobile and Marlette was driving with Gray sitting in the front passenger seat.

Gray stated that as they pulled out of the parking lot onto Park Street, they noticed the defendant drive by the parking lot while "grimacing and staring very intently at Marlette's car." Marlette turned onto Park Street approximately two car lengths behind the defendant's truck. The two women proceeded on Park Street to the intersection of Broadway and Park, at which point they turned right following the defendant as it was their regular route home. The defendant continued on Broadway to the intersection of University. At this point, Gray commented to Marlette that it was strange that the defendant had turned right on Broadway as he needed to turn left in order to go home. At University and Broadway, the defendant turned left and Marlette and Gray again followed as it was their usual

route home. The two cars proceeded down University Avenue with the defendant's car in the lead. Gray testified that as they approached the intersection of University and Vine their car was in the far right lane. At this particular intersection there are four lanes: one to turn right; two lanes to continue on University Avenue; and, one lane to turn left. Gray stated that the defendant's car was in the center lane next to the left-hand turn lane and thus committed to continue on University Avenue or turn left onto Vine. After the women had turned right onto Vine Street, Gray testified that she observed the defendant turn very sharply out of the left-center lane to turn right onto Vine Street. Gray stated that the defendant followed their car for a few blocks at which point the women turned into the Urbana police station where they sought an escort home.

Mrs. Mary Carolyn Marlette also testified on behalf of the State corroborating Gray's testimony. Marlette stated that she became concerned as they left the Carle Clinic parking lot and "saw the gentleman staring at us in my car." She further stated that at the intersection of University and Vine, she saw the defendant's car in the center lane and that she specifically turned right because the defendant "was committed to go perfectly straight." After she turned, she looked in the rearview mirror and saw that the defendant had turned right and was coming their way.

The defendant testified in his own behalf stating that he had gone to the Carle Clinic on August 14 at approximately 5 p.m. to meet a friend, and that it was purely coincidental that he happened upon his ex-wife. He further testified that Marlette and Gray followed his car from the clinic to the intersection of University and Vine. He stated that he turned right onto Vine Street before the women who passed him shortly after he made the right-hand turn. The defendant acknowledged that he continued north on Vine Street behind the women for a few blocks until they turned into the Urbana police station. The defendant then stated that he continued on Vine Street to the Sunnycrest Standard Station to purchase gas. The defendant denied that he had purposely followed his ex-wife.

The court found the defendant's testimony concerning the routes he took and the amount of time it took him to be incredible. The court accepted Gray's version of the facts expressly stating that the credibility of the witnesses was a deciding factor in finding the defendant guilty of harassing Gray. The court found that the defendant's acts of turning right onto Vine Street from a center lane, and then following Gray, coupled with his earlier action of staring at her, would be worrisome to Gray causing her anxiety and discomfort. The court stated

that causing someone to be worried, anxious, and uncomfortable was basically the definition of harassment. The court noted that defendant's actions were not coincidental and when he found his ex-wife he intentionally took action to follow her causing the women to deviate from their normal path home. The court concluded that the People had shown by a preponderance of the evidence that the defendant had violated a condition of his conditional discharge and that he did in fact harass Gray on the date in question.

■ In a hearing to revoke conditional discharge, the State has the burden of going forward and proving the violation by a preponderance of the evidence. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—4(c).) Upon review, conflicting evidence alone will be insufficient to overrule a finding of a violation. (See *People v. Crowell* (1973), 53 Ill. 2d 447, 292 N.E.2d 721; *People v. Allegri* (1984), 127 Ill. App. 3d 1041, 469 N.E.2d 1126, *aff'd* (1985), 109 Ill. 2d 309, 487 N.E.2d 606.) Since the trial judge is in a better position to weigh the credibility of testimony and evidence, a trial court judgment will only be overruled when the testimony is contrary to the manifest weight of the evidence.

■ ■ An analysis of the Domestic Violence Act with respect to defendant's conduct requires an examination of the statute as well as the legislative purpose behind it. The specific terms in a statute take color from the words surrounding them and must be interpreted in light of the context in which they are used. (*People v. Parkins* (1979), 77 Ill. 2d 253, 396 N.E.2d 22.) In this respect, the word "harass" as used in the Domestic Violence Act takes color from the words "striking," "threatening," and "interfering with the personal liberty of." Harassment results from intentional acts which cause someone to be worried, anxious, or uncomfortable. Harassment does not necessarily require an overt act of violence.

The intent of the legislature in adopting the Domestic Violence Act was to keep people from harassing, striking, and interfering with the personal liberty of people with whom they have had intimate relationships. The express legislative purpose of a statute is to prevent and alleviate domestic violence. (Ill. Rev. Stat. 1983, ch. 40, par. 2301—2.) The Act specifically seeks to expand the civil and criminal remedies for victims of domestic violence. Ill. Rev. Stat. 1983, ch. 40, par. 2301—2(4).

The Illinois Domestic Violence Act defines "abuse" as "the act of striking, threatening, harassing or interfering with the personal liberty of any family or household member by any other family or household member." (Ill. Rev. Stat. 1983, ch. 40, par. 2301—3.) It is the

duty of the trial court, in its broad discretion, to determine whether a particular individual's actions constitute abuse on a case-by-case basis. (*In re Marriage of Hagaman* (1984), 123 Ill. App. 3d 549, 554, 462 N.E.2d 1276, 1280.) The trial judge will assess the credibility of the witnesses and the acts and statements described. In doing so, the trial judge necessarily considers the potential for future abuse.

Based upon the intent of the legislature and the meaning of the surrounding terminology, harassment occurs when a protagonist knowingly causes his victim to suffer undue distress. (See *People v. Blackwood* (1985), 131 Ill. App. 3d 1018, 1022, 476 N.E.2d 742, 744.) The protagonist must act with knowledge of the protective order for there to be a violation. As the defendant knew of the protective order, and intentionally caused his ex-wife to suffer undue distress, there is no error.

Defendant further asserts that the provisions of the Illinois Domestic Violence Act which criminalize conduct which constitutes "harassing" are unconstitutionally vague in violation of the fourteenth amendment to the United States Constitution.

The circuit court did not address this issue as it was not raised at the trial court level nor in any post-trial motions. As a result, defendant has waived this issue for purposes of appeal. Defendant appeals from an order revoking conditional discharge. Defendant failed to question the constitutionality of the Domestic Violence Act at the time he was initially sentenced thereunder or in any post-trial motions.

A constitutional question may not be properly raised for the first time in a court of review, but must have been presented to the trial court and ruled upon by it. (*People v. Friesland* (1985), 109 Ill. 2d 369, 488 N.E.2d 261; *People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353.) The purpose of the waiver rule is to ensure a fair, orderly, and expeditious administration of justice. (*People v. Friesland* (1985), 109 Ill. 2d 369, 378, 488 N.E.2d 261.) When an issue is properly raised and preserved, the attention of the trial judge is focused upon those particular aspects of the proceedings with which the defendant is concerned and further give the reviewing court the benefit of the judgment of the trial court with reference thereto. Defendant's failure to properly raise and preserve his constitutional challenge constitutes a waiver.

On the merits, a statute enjoys a presumption of constitutionality. (*Livingston v. Ogilvie* (1969), 43 Ill. 2d 9, 250 N.E.2d 138.) A law will be invalidated for indefiniteness or uncertainty only where the statute is so indefinite and uncertain that courts are unable to de-

termine what the legislature intended, or where the statute is so incomplete or inconsistent that it cannot be executed. (*Tometz v. Board of Education* (1968), 39 Ill. 2d 593, 237 N.E.2d 498.) Impossible standards of specificity are not required. (*Jordan v. De George* (1951), 341 U.S. 223, 95 L. Ed. 886, 71 S. Ct. 703.) To be unconstitutionally vague, the terms of a statute must be so ill-defined that the ultimate decision as to its meaning depends on the whims of the trier of fact rather than upon objective criteria or facts. *People v. Pembrock* (1976), 62 Ill. 2d 317, 342 N.E.2d 28.

The constitutionality of the Domestic Violence Act has twice been affirmed with respect to challenges of vagueness. (See *People v. Blackwood* (1985), 131 Ill. App. 3d 1018, 476 N.E.2d 742; *In re Marriage of Hagaman* (1984), 123 Ill. App. 3d 549, 462 N.E.2d 1276.) In *Hagaman,* the term "abuse" as employed in the Act was alleged to constitute a violation of due process. The court distinguished standards in assessing the vagueness of a penal as opposed to a nonpenal statute. (*In re Marriage of Hagaman* (1984), 123 Ill. App. 3d 549, 553, 462 N.E.2d 1276, 1280.) In upholding the constitutionality of the statute, the court noted:

> "The purpose of the Illinois Domestic Violence Act, set forth in section 102 (Ill. Rev. Stat. 1983, ch. 40, par. 2301–2), is to expand the civil and criminal remedies for victims of domestic violence including, if necessary, the physical separation of the parties to prevent further abuse. Section 102 recognizes that domestic violence and family disharmony often involve a pattern of escalating violence. The Act provides a statutory framework for effecting a brake on the escalation and, as such, is to be liberally construed. While the statutory definition of abuse encompasses a broad range of conduct, we conclude it is not so unclear that courts are unable to determine the legislature's intent." 123 Ill. App. 3d 549, 553-54, 462 N.E.2d 1276, 1279-80.

Similarly, in *Blackwood,* the court noted that the statute, whose objective is to act as a safety net against familial interferences, cannot be expected to address every conceivable form of abuse. (*People v. Blackwood* (1985), 131 Ill. App. 3d 1018, 1023, 476 N.E.2d 742, 745.) Consequently, a degree of generality must be tolerated to give effect to the intended scope of the Act. Since the statute is phrased in terms of conduct intended by specific individuals to inflict undue distress upon a specific individual or group of individuals, the scope of conceivably punishable conduct under the Act is greatly narrowed.

■ The term "harass" as employed in the Illinois Domestic Violence Act is limited in two ways. First, the terms surrounding harass

give light to the meaning. The words "striking," "threatening," and "interfering with personal liberty" delineate the type of conduct which is prohibited. Second, the purpose of the Act restricts the possible application of the term. Only those acts done with intent to cause harm in contravention of a domestic protective order are violative. In this respect, the term harass is not unconstitutionally vague. It is a term limited in application to a specific class of individuals based upon conduct which is assessed by the trial court judge on a case-by-case basis. Consequently, the term "harassment" as utilized in the Illinois Domestic Violence Act is not unconstitutionally vague.

The order of the circuit court is affirmed.

Affirmed.

WEBBER and MORTHLAND, JJ., concur.