THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERT ZAREBSKI, Defendant-Appellant.

Second District   No. 2—87—1150

Opinion filed July 25, 1989.

John J. Westra, Paige Comstock Cunningham, and Ronald M. Farley, all of Johnson, Westra, Whittaker & Austin, P.C., of Carol Stream, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Robert S. O'Shea, of Springfield (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Robert Zarebski, was convicted following a jury trial on two counts of violating an order of protection entered pursuant to the Illinois Domestic Violence Act (Ill. Rev. Stat. 1985, ch. 40, par. 2301—1 *et seq.*). The jury concluded that defendant violated the order of protection by harassing and entering the residence of his estranged spouse, Leslie Zarebski. Defendant appeals his convictions, arguing that (1) the trial court erred in permitting two undisclosed witnesses to testify for the State; (2) the trial court erred by limiting defendant's cross-examination of Leslie; (3) defendant was denied a fair trial by questions propounded by the State and by the State's closing argument; (4) the trial court erred by denying defendant's motion for a directed verdict on count I of the complaint, which alleged that defendant harassed Leslie; (5) the State failed to prove defendant guilty beyond a reasonable doubt on the basis that defendant did not knowingly violate the order of protection; and (6) defendant was denied the effective assistance of counsel. We affirm.

On July 9, 1986, Leslie obtained an *ex parte* order of protection prohibiting defendant from "striking, threatening, harassing or interfering with Leslie R. Zarebski or any other family or household member." The order also granted Leslie possession of the parties' residence to the exclusion of defendant. The order was effective from July 9, 1986, to July 16, 1986. On July 13, 1986, defendant was in-

volved in an incident at the premises during which he engaged in an argument with Everett Tracy, a family friend who was visiting Leslie at the time. Defendant left the premises but was later arrested and charged with violating the order of protection by harassing Leslie and entering the premises.

Prior to trial, defendant filed a motion for a bill of particulars requesting the State to describe the manner in which defendant harassed Leslie and entered the premises. The State responded by alleging that defendant "harassed Leslie Zarebski *** by yelling profanities and threatening Everett Tracy who was present at the time in question." The State further alleged that defendant entered the premises "by unlocking the front door with a key" and entering the front hallway.

The trial commenced on September 30, 1987. Leslie testified that on July 13, 1986, she was at home with her four children and her eldest son's girlfriend. Everett Tracy and his minor daughter were also present. After finishing dinner, Tracy began installing chain locks on the doors of the house. Sometime after 7 p.m., Leslie's eldest son, Rick Zarebski, announced that defendant had parked his car in front of the house and was approaching the front door. Leslie testified that she also saw defendant exit his vehicle and approach the house. Leslie told her children to go into the basement while she telephoned the police. Defendant subsequently entered the house through the front door and confronted Tracy. Leslie stated that defendant swore at Tracy and ordered him out of the house. Leslie further testified that defendant ignored Tracy's request for defendant to leave and began to approach her instead. Defendant subsequently left the house. Leslie stated that she was terrified by the incident and was "scared that [her] life was over." On cross-examination, Leslie testified that she was involved in a contested divorce with defendant and that her relationship with him was hostile. Leslie denied that she had previously communicated any desire to speak to defendant on the date of the incident.

The State next called Deputy Robert Lesner of the Du Page County sheriff's department. Deputy Lesner testified that he served defendant with the order of protection, read it to him, and answered defendant's questions regarding its prohibitions. Deputy Lesner told defendant that he would be in violation of the order and subject to immediate arrest if he attempted to go to the residence.

The State next called Everett Tracy. Tracy testified that he was a friend of the Zarebskis and had frequent contact with them. Tracy testified that he was aware that an order of protection had been en-

tered against defendant and witnessed Deputy Lesner serve and read defendant the order. Tracy stated that he was at the Zarebski residence on July 13, 1986, when defendant arrived. Tracy testified that defendant entered the residence through the front door, swore at him, and ordered him out of the house. Tracy also testified that defendant walked further into the house as Tracy attempted to talk him into leaving. Tracy stated that he could not recall whether defendant said anything to Leslie, who was on the phone with police at the time. Defendant subsequently left the premises. Tracy denied making any physical contact with defendant on that occasion.

The State next called Rick Zarebski. Rick testified that he was present at the Zarebski residence on July 13, 1986, when defendant arrived. Rick stated that at approximately 7:30 p.m., he saw defendant drive by the residence, turn around, park his car in front of the house, and approach the front door. Rick testified that he told the occupants of the house, including Leslie, that defendant was approaching the front door. Rick saw Leslie pick up the telephone and heard defendant insert a key into the lock and open the front door. Rick testified that defendant came through the front door and confronted Tracy by yelling obscenities and ordering him out of the house. Rick further stated that Tracy attempted to talk defendant into leaving but that defendant stepped past Tracy and began to approach Leslie. Defendant subsequently left the premises and was accompanied to his car by Tracy. On cross-examination, Rick stated that he did not witness defendant either speak to or strike Leslie at that time.

The State next called Deputy Robert Sebby of the Du Page County sheriff's department. Deputy Sebby testified that he was dispatched to the Zarebski residence in response to a domestic dispute on July 13, 1986. Deputy Sebby spoke to Leslie, who he characterized as "very distraught, almost near hysterical." Deputy Sebby further testified that it took approximately 20 to 30 minutes before Leslie calmed down enough to talk to him.

At the conclusion of the State's case, defendant moved for a directed verdict on count I of the complaint, which alleged that defendant harassed Leslie. Defendant noted that there was no evidence that he even spoke to Leslie, and further argued that his conduct toward Everett Tracy did not constitute harassment of Leslie. The trial court denied defendant's motion after concluding that the issue was a question of fact for the jury.

The trial continued with the testimony of Debbie Zarebski, defendant's sister. Debbie testified that on July 13, 1986, at approximately 4 p.m., Leslie telephoned her with a message that Leslie wanted to

speak to defendant. Debbie stated that she delivered that message to defendant several hours later.

Defendant testified on his own behalf. Defendant testified that he did not understand the order of protection and attempted to speak to the judge who issued the order to find out exactly what it entailed. Defendant testified that the judge was reluctant to discuss the case and suggested that defendant retain counsel. Defendant stated that he did not retain counsel at that time. Defendant testified that on July 13, 1986, his sister advised him that Leslie wanted to speak to him. Defendant stated that he subsequently went to the premises in response to Leslie's request. Defendant testified that he was walking toward the front door of the premises when he heard Leslie scream and saw her and Tracy embracing in the kitchen. Defendant stated that Tracy met him at the front door and pushed him back. Defendant further testified that he told Tracy to leave the premises at which time Tracy grabbed defendant "by the throat" and told him not to return or Tracy would kill him. Defendant denied threatening Tracy and stated that he immediately left the premises. Defendant also denied entering the premises.

The jury returned guilty verdicts on both counts of the complaint. The trial court subsequently denied defendant's motion for a new trial and sentenced defendant to concurrent terms of one year of conditional discharge and 80 hours of public service. Defendant was also fined $250 on each count. Defendant filed this timely appeal.

Defendant first contends that the trial court erred in permitting the testimony of two witnesses for the State who were not disclosed prior to trial. Defendant argues that the testimony of Rick Zarebski and Deputy Sebby resulted in surprise and prejudice to defendant so as to require reversal. We disagree.

■ It is within the discretion of the trial court to allow a previously unlisted witness to testify at trial, and the trial court's decision will not be disturbed absent an abuse of that discretion. (*People v. Jordan* (1967), 38 Ill. 2d 83, 93; *People v. Frisco* (1972), 4 Ill. App. 3d 1034, 1036.) A reviewing court will find an abuse of discretion when the record demonstrates surprise or prejudice to the defendant. (*People v. Millan* (1977), 47 Ill. App. 3d 296, 300; *Frisco*, 4 Ill. App. 3d at 1036.) The burden is on the defendant to show surprise or prejudice. See *Jordan*, 38 Ill. 2d at 93.

■ In the instant action, Rick Zarebski, Deputy Sebby, and Deputy Lesner were not disclosed as witnesses for the State prior to trial. Defendant only challenges the testimony of Rick Zarebski and Deputy Sebby. Initially, we note that defendant did not object to ei-

ther witness on the basis of nondisclosure. We agree with the State that defendant's failure to object to the testimony of these witnesses on the basis of nondisclosure constitutes a waiver of this issue on appeal. While we note that there is a reference in the transcript of defendant's post-trial motion that "unrecorded" objections may have been raised as to Leslie Zarebski and Deputy Lesner, Deputy Lesner's testimony is not challenged on appeal and defendant does not contend that any objection was made with respect to Rick Zarebski. Indeed, in his argument that he was denied effective assistance of counsel, defendant states that his attorney did *not* object to the State calling Rick Zarebski. Furthermore, the colloquy at the post-trial motion hearing indicates that defendant was given an opportunity to speak to any undisclosed witnesses prior to the State's examination. Moreover, the trial transcript indicates that defendant engaged in a thorough cross-examination of each witness. Thus, even assuming defendant did not waive the issue of nondisclosure by failing to object, the record does not support his allegation of prejudice. Accordingly, we conclude that the trial court did not err in permitting the testimony of Rick Zarebski or Deputy Sebby.

Defendant next contends that the trial court erred in limiting defendant's cross-examination of Leslie. Defendant argues that the trial court improperly prohibited defendant from cross-examining Leslie regarding the nature of her divorce from defendant so as to establish bias, prejudice, and ulterior motive for her testimony. We disagree.

■ Generally, a defendant is entitled to wide latitude in conducting a cross-examination of a witness for the purpose of establishing bias. (*People v. Rufus* (1982), 104 Ill. App. 3d 467, 473.) In determining whether a trial court has improperly restricted the scope of cross-examination resulting in reversible error, the test is whether the trial court has clearly abused its discretion such that manifest prejudice results. (*Rufus*, 104 Ill. App. 3d at 474.) In *Rufus*, wherein the defendant was improperly restricted from cross-examining a State's witness regarding the specific nature of charges pending against him, the appellate court concluded that no prejudicial error requiring reversal resulted in that defense counsel was not precluded from establishing the existence of pending charges and therefore brought the credibility of the witness into question. 104 Ill. App. 3d at 474.

■ In the instant action, defendant was permitted to elicit testimony from Leslie Zarebski that she and defendant were involved in a "contested divorce." However, in allowing defendant to obtain that testimony, the trial court stated that it did not want to get involved in

a divorce proceeding. While defendant now challenges that ruling as a "limitation" precluding him from establishing Leslie's bias, it is clear from a complete reading of the record that the jury was aware of the hostility between Leslie and defendant, and defendant was permitted to challenge her credibility as a result. Indeed, the trial court emphasized the nature of the "contested" divorce proceeding by asking the witness whether she and defendant were "fighting" or "arguing about various matters." The witness answered affirmatively, and the jury was left to draw whatever conclusions it wished from that testimony. Defendant further commented on this hostility in his closing argument wherein he stated that Leslie had something to gain by having defendant found guilty of a crime. From this evidence it is clear that defendant was able to establish bias without improper limitation. Moreover, defendant did not offer to the trial court, nor argue to this court, what questions and answers he would have otherwise elicited from the witness regarding her divorce proceeding. Accordingly, we conclude that no error was committed by the trial court with respect to limiting defendant's cross-examination of Leslie.

■ Defendant next contends that certain questions propounded by the State and the State's closing argument were prejudicial and denied him a fair trial. Specifically, defendant cites the State's attempt to elicit testimony regarding Leslie's whereabouts prior to the incident and the whereabouts of the children during the incident as attempts to prejudice the jury. Defendant further argues that the State's closing argument characterizing the trial court as the victim in the instant action was improper and prejudicial. We disagree.

In support of his argument, defendant cites *People v. Weinger* (1981), 101 Ill. App. 3d 857. In *Weinger*, the appellate court reversed a defendant's conviction after concluding that the State's improper conduct during the trial prejudiced defendant. (*Weinger*, 101 Ill. App. 3d at 872.) Specifically, the court noted that the State's failure to introduce evidence previously promised in its opening statement, repeated attempts to get witnesses to answer questions to which the trial court had already sustained defense objections, and references to excluded evidence during its closing argument deprived the defendant of his constitutional right to a fair trial. (101 Ill. App. 3d at 867-72.) In so ruling, the court stated that it had examined the entire record and, "[w]hen considered as a whole," it could not say that the many trial errors committed were harmless beyond a reasonable doubt or that they did not contribute to the convictions. 101 Ill. App. 3d at 872.

Defendant's reliance on *Weinger* is misplaced. The record in the

instant action does not indicate the extreme form of prosecutorial misconduct that was present in the *Weinger* case. Defendant's assertion that the State, "on many different occasions," either directly asked or tried to elicit prejudicial answers concerning Leslie's whereabouts prior to the incident is without merit. We note that the first reference to Leslie's whereabouts prior to the incident was not elicited as the result of an improper question by the State, but rather occurred in a narrative given by the witness during which she noted that defendant had been circling her house "since [she] came home from the shelter." An objection to that reference was immediately sustained, and the only other reference with respect to Leslie's whereabouts prior to the incident came during the State's redirect examination when she was asked about her whereabouts on July 11, 1986. Defendant objected to Leslie's response that she was at the family shelter, and the trial court immediately sustained the objection and told the jury to disregard her answer. We cannot say that this reference so prejudiced defendant that he was denied a fair trial. We note that defendant did not state the basis for his objection to the first reference to the family shelter such that the State could have been placed on notice of its impropriety. In any event, we are not of the opinion, viewing the record as a whole, that this single additional reference to Leslie's whereabouts prejudiced the jury, particularly since the trial court immediately sustained defendant's objection to that reference and admonished the jury to disregard it.

Similarly, we cannot say that references to the whereabouts of the children during the incident were prejudicial and denied defendant a fair trial. Leslie testified that prior to defendant entering the house, she instructed her children to go down into the basement. The trial court overruled defendant's objection to this testimony. The State did not attempt to elicit, nor did Leslie offer, a reason for sending the children to the basement. However, two further attempts by the State to ask other witnesses about the whereabouts of the children during the incident were objected to and sustained on the basis that the whereabouts of the children was immaterial to the action. Defendant draws this court's attention to a third attempt to determine the whereabouts of the children; however, a review of the record indicates that this testimony concerned the whereabouts of the children *at the time defendant was served with the order of protection* and does not relate to defendant's argument on this issue. We do not consider the State's attempt to elicit testimony regarding the whereabouts of the children to be prejudicial in this action. We note that the State was allowed to elicit that information from Leslie; therefore, we find no

impropriety in the State's attempt to elicit the same information from only two subsequent witnesses. In any event, the court sustained defendant's objections to additional testimony regarding the whereabouts of the children. Accordingly, we do not consider the State's questioning of the witnesses to have prejudiced defendant.

■ Defendant's additional argument that he was prejudiced by the State's closing argument characterizing the trial court as the victim in this action is also without merit. We note that the State referred to the trial court as the victim in the instant action on three separate occasions during its closing argument. Defendant failed to object to that characterization on the first two occasions, and defendant's objection to the third such characterization was immediately sustained. While we might agree that the State's characterization was not correct, we do not consider these references, when viewed in the context of the entire argument, as prejudicing the jury in the instant action. Accordingly, we conclude that defendant was not denied a fair trial as a result of prosecutorial misconduct.

Defendant next contends that the trial court erred in denying his motion for a directed verdict on count I of the complaint at the close of the State's case. Defendant argues that no evidence was introduced establishing that defendant spoke to or physically touched Leslie, and therefore, the State failed to prove that defendant "harassed" her. We disagree.

■ The order of protection precluded defendant from "striking, threatening, harassing or interfering with the personal liberty of Leslie R. Zarebski or any other family or household member." Harassment results from intentional acts which cause someone to be worried, anxious, or uncomfortable. (*People v. Whitfield* (1986), 147 Ill. App. 3d 675, 679.) The protagonist must knowingly cause his victim to suffer emotional distress. (*Whitfield*, 147 Ill. App. 3d at 680.) Thus, for harassment to exist, there does not need to be any overt act of violence. 147 Ill. App. 3d at 679.

■ In the instant action, the State alleged that defendant "harassed Leslie Zarebski *** by yelling profanities and threatening Everett Tracy who was present at the time in question." The evidence indicates that Leslie was present at the time, was on the phone with police attempting to have defendant removed from the house, *and was approached by defendant while she was speaking to police.* Thus, we need not determine whether defendant's conduct of speaking to an acquaintance or neighbor of the protected party constitutes harassment of the protected party since there is evidence that Leslie, the protected party in the instant action, was the subject of defendant's

conduct. Defendant knew that the order of protection barring him from harassing Leslie was in effect on July 13, 1986. Defendant none-theless entered the residence with knowledge that Leslie was present and, in her presence, engaged in a shouting match with her guest and ordered him out of the house. This conduct, especially when coupled with his act of approaching Leslie before exiting the premises, could certainly be found by a jury to constitute "harassment" of Leslie. In addition, Deputy Sebby's testimony that Leslie was "near hysterical" clearly indicates her state of mind after the incident. Accordingly, we conclude that the trial court did not err in denying defendant's motion for a directed verdict.

Defendant next contends that the State failed to prove him guilty beyond a reasonable doubt as to the issue of whether he knowingly violated the order of protection when he went to the premises. Defendant argues that the evidence indicated that he was confused with respect to the scope of the order and therefore could not be found guilty of knowingly violating the order. We disagree.

■ A jury verdict will not be set aside unless the evidence is so palpably contrary to the verdict so as to create a reasonable doubt of guilt. (*People v. Gosse* (1983), 119 Ill. App. 3d 733, 738.) It is the func-tion of the jury to determine the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. (*People v. Martinez* (1984), 129 Ill. App. 3d 145, 161-62.) Where the evidence is merely conflicting, a court of review will not substitute its judgment for that of the jury. *Martinez*, 129 Ill. App. 3d at 162.

■ The evidence in the instant action regarding defendant's knowledge at the time he went to the residence is conflicting. Defend-ant asserts that he did not know the scope of the order and supports that assertion with testimony that he approached the trial judge who issued the order and attempted to clarify its meaning. However, addi-tional evidence indicates that the officer who served defendant with the order advised him that he would be in violation of the order if he were to go to the house even for the purpose of removing his belong-ings. Defendant's further assertion that he went to the premises at Leslie's request is also contradicted. Leslie flatly denied that she left a message with defendant's sister indicating that she wanted to speak to him. Thus, the resolution of defendant's knowledge at the time he entered the premises and his purpose for going to the premises was a question of fact for the jury. The jury apparently weighed the credibil-ity of the witnesses in favor of the State. The evidence does not com-pel a contrary determination, and, therefore, we will not set aside the

jury's verdict.

Defendant's final contention challenges the competence of his trial counsel. Defendant argues that he was denied the effective assistance of counsel in that his attorney failed to (1) object to the testimony of Rick Zarebski on the basis that he was an unlisted witness; (2) request a continuance when the State produced three undisclosed witnesses at trial; (3) object to certain questions propounded by the State; (4) object to inflammatory statements made by the State during closing argument; (5) adequately prepare for trial in that he only met with defendant for five minutes immediately prior to the trial; and (6) request a change of venue. We disagree.

In order to prevail on an ineffective assistance of counsel claim, defendant must show that counsel's performance was deficient and that this deficient performance prejudiced him. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) To overcome the presumption that counsel's performance fell within the wide range of professionally competent assistance, defendant must prove that counsel's representation fell below an objective standard of reasonableness. (*Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) In other words, defendant must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

In the instant action, beyond providing this court with a shopping list of ways in which defendant's trial counsel was incompetent, defendant fails to elaborate on how his attorney's conduct was professionally deficient and further fails to argue how each item listed prejudiced his case. Indeed, defendant's allegations of incompetence of counsel are without merit. We note that defendant's allegations with respect to counsel's failure to object to the testimony of undisclosed witnesses and failure to request a continuance when such witnesses were produced at trial is without merit given the representations in the record that defendant was offered an opportunity to interview those witnesses prior to taking the stand. Moreover, the record indicates that defendant was not handicapped by their testimony and conducted a thorough cross-examination of each witness. In addition, defendant's statement that his trial counsel failed to object to irrelevant and extraneous questions is not supported by the record. Defendant does not advise this court which irrelevant and extraneous questions asked by the State were not objected to by defendant. Moreover, we note that defendant did object and obtain favorable rulings on many questions propounded by the State. While defendant's

counsel did fail to object to two references in the State's closing argument that the court was the victim, as we noted above, we do not consider these references prejudicial in the context of the entire argument. With respect to defendant's argument that his counsel was incompetent by failing to adequately prepare before trial, defendant provides no support in the record for his contention. Similarly, the record does not support defendant's contention that he had an ongoing conflict with the State's Attorney's office and many of the judges in Du Page County. Thus, defendant's argument that his counsel was incompetent for failing to request a change of venue is also without merit. Accordingly, we conclude that defendant was not denied a fair trial on the basis of ineffective assistance of counsel.

For all the reasons set forth above, we affirm defendant's convictions.

Affirmed.

NASH and DUNN, JJ., concur.