THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BARRY REYNOLDS, Defendant-Appellant.

Fourth District   No. 4—97—0757

Opinion filed January 28, 1999.

L. Stanton Dotson, of Mattoon, for appellant.

Diane Sipich, State's Attorney, of Tuscola (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Barry Reynolds, was convicted after a jury trial of violating an order of protection under section 12—30 of the Criminal Code of 1961 (720 ILCS 5/12—30 (West 1996)). He appeals, contending (1) the statute is vague and overbroad and, therefore, violative of the first and fourteenth amendments to the United States Constitution (U.S. Const., amends. I, XIV) and article I, sections 2 and 4, of the Illinois Constitution (Ill. Const. 1970, art. I, §§ 2, 4); (2) the State failed to prove him guilty beyond a reasonable doubt; (3) the trial court erred in excluding certain evidence; and (4) the prosecutor's closing argument violated due process. We affirm.

Defendant and JoEllen Thomas were married on February 14, 1982, and separated May 24, 1995. Their marriage was dissolved on May 28, 1996. JoEllen sought the dissolution and has custody of their four children. On October 29, 1995, she obtained an order of protection (order) against defendant pursuant to the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/101 *et seq.* (West 1994)). Defendant was charged with a violation of the order of protection because, having notice of the order, he intentionally committed an act prohibited by the order: sending a written note to the home of JoEllen Reynolds with the intent to harass her.

JoEllen testified at trial an envelope in defendant's handwriting addressed to defendant's and JoEllen's daughter, JoAnna, was received in the mail. The postmark on the envelope was April 22, 1997. JoAnna had her seventh birthday on April 13. JoEllen gave the envelope to JoAnna, who opened it and gave the card inside to her mother because a post-it note was attached with writing in defendant's handwriting. The note said "Bye the bye, the State dropped all charges on you and Jerry's bull you tried to pull. Barry."

JoEllen identified Jerry as her fiancé. He was a witness to a June

1996 incident about which JoEllen had made a formal complaint to authorities charging defendant with a previous violation of the same order of protection. JoEllen testified defendant did not send any of the children birthday cards in 1996, or to the three other children in 1997, nor did he send them Christmas cards. When JoEllen first saw the post-it note she said, "It made me sick to my stomach to see that he had to use that, that he had to do that." She stated the distress lasted for a period of time and she started to cry on the witness stand.

JoEllen said in her statement to police she knew the note referred to the June 1996 violation of the order and knew it was "harassment intimidation." She knew defendant had violated the order. JoEllen stated when she received the note she did not believe what it said. She knew the charges had not been dropped; defendant spent a weekend in jail and had been fined after pleading guilty. Therefore, when she got defendant's note she believed he was harassing and "persecuting" her again.

It was JoEllen's understanding she and defendant could communicate about their children under the order, but she had not communicated with him for any purpose other than visitation and child support. JoEllen also denied the note was stuck to a letter defendant sent to her that was included in the same envelope with the card to JoAnna.

Defendant testified he had agreed to the order. He admitted writing the note and sending it to JoEllen's address but stated he did not nor would he have put it on JoAnna's birthday card. Defendant stated he stuck the note on a separate letter to JoEllen that he thought was in the same envelope with the card. The letter he attached the card to was undated, and defendant could not recall the date he mailed it but stated it was soon after he had received the children's midterm grades and the letter related to their poor grades. He stated he did not put the note's contents on the back of the full-page letter because "I was at the bottom of the page and I wasn't going to flip it over and start messing with it."

Defendant testified the circuit clerk's office informed him the prior charge was dismissed. After he sent the note he spent two days in jail as a result of a plea agreement in which he pleaded guilty to contempt of court based on the same prior incident. Defendant testified he wrote the note "[t]o let [JoEllen] know that she can't cry wolf all the time, and that the charges were dismissed. *** I wanted my [ex-]wife to know that she cannot keep harassing me." He wanted "[t]o show her that she can't come in here and cry wolf every time I look at her wrong, and she's going to have me arrested." Defendant was angry and upset with JoEllen both at the time he wrote the note

and on the day of his testimony. He stated he did not intend to harass JoEllen.

The jury returned a verdict of guilty. Defendant was sentenced to 24 months' probation with a 30-day jail sentence subject to work release and an additional 120 days in jail subject to remission in the event he fully complied with the order of probation. This appeal followed.

■ Defendant asserts first the term "harassment" in the Act is vague and overbroad. To prevail on a vagueness challenge to a statute, a party must demonstrate the statute was vague as applied to the conduct for which the party is being prosecuted. *People v. Bailey*, 167 Ill. 2d 210, 228, 657 N.E.2d 953, 962 (1995). To withstand a challenge for vagueness, a statute must give a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful and what conduct is unlawful. *People v. Anderson*, 148 Ill. 2d 15, 27-28, 591 N.E.2d 461, 467 (1992); *People v. Bales*, 108 Ill. 2d 182, 188, 483 N.E.2d 517, 520 (1985).

■ Although the term "harassment" in the Act has already been upheld as not unconstitutionally vague (see *People v. Whitfield*, 147 Ill. App. 3d 675, 682, 498 N.E.2d 262, 267 (1986)), defendant contends the term "harassment" as used in section 103(7) of the Act is vague because his conduct does not fit into any of the six types of conduct the Act states are *presumed* to cause emotional distress, an element of harassment. The Act states in pertinent part:

"(7) 'Harassment' means knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner. Unless the presumption is rebutted by a preponderance of the evidence, the following types of conduct shall be presumed to cause emotional distress:

(i) creating a disturbance at petitioner's place of employment or school;

(ii) repeatedly telephoning petitioner's place of employment, home or residence;

(iii) repeatedly following petitioner about in a public place or places;

(iv) repeatedly keeping petitioner under surveillance by remaining present outside his or her home, school, place of employment, vehicle or other place occupied by petitioner or by peering in petitioner's windows;

(v) improperly concealing a minor child from petitioner, repeatedly threatening to improperly remove a minor child of petitioner's from the jurisdiction or from the physical care of petitioner, repeatedly threatening to conceal a minor child

from petitioner, or making a single such threat following an actual or attempted improper removal or concealment, unless respondent was fleeing an incident or pattern of domestic violence; or

(vi) threatening physical force, confinement or restraint on one or more occasions." 750 ILCS 60/103(7) (West 1996).

Defendant argues he could not have known his conduct fell within the definition of harassment because it is so different in type and quality from the acts enumerated in the statute as to be unclassifiable under the statute. He contends the types of conduct set forth in section 103(7) of the Act are incapable of informing him or anyone else the writing of a note with the words he used would constitute harassment.

The types of conduct set forth in section 103(7) of the Act are not exhaustive. The list describes only conduct which, absent rebutting evidence, establishes emotional distress. While defendant's specific conduct is not described by the subsections of section 103(7), this is not indicative of whether it constitutes harassment. The Act also defines "harassment" as knowing conduct that is not necessary to accomplish a reasonable purpose, would cause a reasonable person emotional distress, and does cause the petitioner emotional distress. 750 ILCS 60/103(7) (West 1996). It results from intentional acts that cause someone to be worried, anxious, or uncomfortable. *People v. Zarebski*, 186 Ill. App. 3d 285, 294, 542 N.E.2d 445, 452 (1989).

■ At defendant's trial, the court took judicial notice of the case file in regard to the previous charge of violating the order filed against defendant. While that specific charge was dismissed as part of a plea agreement, defendant pleaded guilty to contempt of court for the same behavior and served two days in jail. Defendant stated his purpose in writing the note was to show JoEllen she could not charge him with violating the order every time she wanted to. The note was not factually correct because the State did not drop "all charges." Defendant's conduct in stating otherwise in his note coupled with his stated purpose to deter JoEllen from filing more charges results in the inference defendant's conduct was an attempt to intimidate JoEllen into not enforcing the order against him. The order itself prohibited defendant from intimidating JoEllen, defendant should have known his objective was not a reasonable purpose and, hence, the conduct fell under the definition of harassment at the beginning of section 103(7). Section 103(7) and its definition of harassment are not vague.

■ As for being overbroad, the Act has already been held not to be overbroad. See *People v. Blackwood*, 131 Ill. App. 3d 1018, 1023-24, 476 N.E.2d 742, 745-46 (1985). Further, the doctrine of overbreadth is

designed to protect first amendment freedom of expression from laws written so broadly the fear of punishment might discourage taking advantage of that freedom. *Bailey*, 167 Ill. 2d at 226, 657 N.E.2d at 961. Here, the element of expression that may come under the definition of harassment is not constitutionally protected. As the Act provides, the speech that section 103(7) would inhibit must be unnecessary to accomplish a reasonable purpose, would cause another reasonable person emotional distress, and actually does cause the petitioner emotional distress. Such speech, punishable under the Act, would not be constitutionally protected and, therefore, the statute would not be overbroad. See *Blackwood*, 131 Ill. App. 3d at 1024, 476 N.E.2d at 746.

■ Defendant next contends the State failed to prove him guilty beyond a reasonable doubt of harassing JoEllen. When reviewing a challenge to the sufficiency of the evidence, it must be viewed in the light most favorable to the State and, if it is sufficient to allow a rational trier of fact to find all the elements of the offense of a violation of an order of protection by harassment beyond a reasonable doubt, it must be affirmed. See *People v. Gee*, 276 Ill. App. 3d 198, 200, 658 N.E.2d 508, 509-10 (1995).

■ To prove harassment, the State must prove conduct on the part of defendant that is not necessary to accomplish a purpose that is reasonable under the circumstances; causes a reasonable person emotional distress; and does cause emotional distress to the petitioner. 750 ILCS 60/103(7) (West 1996). These must be intentional acts that cause someone to be worried, anxious, or uncomfortable and need not involve any overt act of violence. *Zarebski*, 186 Ill. App. 3d at 294, 542 N.E.2d at 452.

■ In this case, defendant testified he agreed to the order initially. He was fully aware of the existence of the order and its constraints on his conduct. He admitted writing the note in question to JoEllen in which he stated all charges against him were dropped. While he knew the initial charge to which he referred, a violation of the order, had been dropped in a plea agreement, he also knew he was to serve two days in jail on the contempt of court charge to which he had pleaded guilty in the agreement. Defendant also admitted he was very angry with JoEllen when he wrote the note and his purpose in doing so essentially was to let her know she could not keep "harassing" him by taking action to enforce the order when he violated it.

Defendant's purpose in writing the note was not to inform her charges had been dropped because that would not have been necessary as she already knew the outcome of that case. Further, his characterization of the outcome was inaccurate. The jury could have legitimately

concluded the note was an attempt to retaliate against her for filing the former charge and to intimidate her into not filing any charges in the future. The note, as an act of retaliation and an intimidation tactic, might cause a reasonable person emotional distress and did cause such distress to JoEllen, who became upset anew while testifying. The parties had very limited contact. They apparently agreed to communicate only about the children and visitation. The defendant chose to write a note about his criminal prosecution to the victim of his earlier behavior. The jury could have reasonably concluded the note was meant to be both sarcastic and distressing to JoEllen. Evidence was sufficient for the jury to find defendant guilty beyond a reasonable doubt.

■ Next defendant argues the trial court erred in excluding evidence. The birthday card defendant sent his daughter to which JoEllen testified the offensive note was attached was admitted into evidence without objection on the first day of trial. Defense counsel attempted to ask defendant what he had written on the inside of the card to his daughter. The prosecutor objected, stating it was irrelevant to the issue at trial, the sending of the post-it note to JoEllen. Defense counsel, in attempting to explain the relevance of the message, stated "the card is a *non sequitur* to anything that would have to do with a note of this kind" and "I think the jury is entitled to know what the card said that had the note that [the prosecutor] says is the violation of the [o]rder of [p]rotection." The trial court sustained the objection.

The next day when the exhibits to be sent to the jury were gathered, defense counsel discovered the card was sealed in a plastic envelope and the jury would not be able to read the handwritten message to his daughter defendant had added to the inside of the card. He objected and asked the court to allow the jury to read the inside message because it was important to defendant's case the jury see the type of card to which the State claimed he had attached his post-it note as opposed to defendant's testimony he had attached the note to a separate letter to JoEllen. The trial court denied defendant's motion.

Evidence is relevant only if it tends to prove any material fact in issue. *In re A.T.*, 197 Ill. App. 3d 821, 833, 555 N.E.2d 402, 410 (1990). Defendant admitted sending the post-it note to JoEllen. It is irrelevant to what other written communication he attached the note. The sending of the note itself constituted harassment, not the nature of the other communication to which it was attached. The inside message of the card did not tend to prove any fact in controversy or render any issue more or less probable. Thus, the trial court did not err in failing to admit the inside contents of the birthday card into evidence.

■ Finally, defendant argues the prosecutor's comments in closing argument were violative of due process. Specifically, defendant objects to the statement and actions made by the prosecutor:

> "Harassment is a form of abuse that carries with it the force of a fist, [counsel makes a smacking sound with her hands] just as surely as if that victim is being struck with that closed and clenched fist."

Defendant contends this comment and action deprived him of a fair trial.

The State contends defendant has waived this issue because he failed to object at trial as well as specify to what he referred in his posttrial motion when he simply stated "[t]he State's Attorney made inflammatory statements during the [f]inal [a]rgument." To sustain an argument for appeal, both an objection at trial and a written posttrial motion raising the objection are required. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). Defendant failed to object at trial and has clearly waived this issue. Further, on the merits the issue does not amount to error.

The State's argument was not inflammatory. The State was emphasizing the seriousness of this offense in response to defendant's contention he simply sent a note to his ex-wife and his words stating he had beaten a previous charge could not upset her when she knew they were not true.

The jury may well have inferred defendant sent the note falsely claiming he had beaten the previous charge against him to thumb his nose at both JoEllen and the existence of the order itself. It was an attempt to demonstrate he could contact her with impunity. It included the implied threat she should not try making a complaint against him again because it was futile. Reading defendant's note could be analogized to a slap in the face to JoEllen. The prosecutor's words and actions in closing argument were well chosen to convey this concept to the jury. The prosecutor's closing argument did not deprive defendant of a fair trial.

The judgment of the trial court is affirmed.

Affirmed.

COOK and STEIGMANN, JJ., concur.