(No. 39432.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
OSCAR JORDAN, Appellant.

*Opinion filed September 29, 1967.*

WARD, J., took no part.

ROBERT C. LANE, of Chicago, (ROBERT J. WAALER, of counsel,) appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and ROBERT A. NOVELLE, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

After trial by jury in the circuit court of Cook County, defendant, Oscar Jordan, was found guilty of the murder of Lawrence Waters and sentenced to a term of not less than 40 nor more than 60 years. He brings direct appeal contending that the failure to appoint counsel until 6 weeks after his arrest on a capital charge, leaving him unrepresented at the coroner's inquest and the preliminary examination, transgressed his constitutional rights to assistance of counsel, due process and equal protection of the law. He also contends that the proof was insufficient to support a conviction of murder, that the conduct of the prosecutor during trial and in final argument was prejudicial and deprived him of a fair and impartial trial, and that "action of the State affected the ability of his appointed counsel to adequately prepare for trial."

The facts underlying this appeal indicate that in the early morning hours of September 3, 1963, two Chicago police officers, in response to a call, arrived at the vicinity of 14th Street and Hamlin Avenue where they discovered the defendant and Lopez House standing over the body of Lawrence Waters who had been shot in the back of the head. The defendant and House told the officers that they found the body while walking back from the home of a relative who lived some 22 blocks away and that they had asked a woman to call the police. They were questioned and released.

On September 12, 1963, a warrant was issued for the arrest of defendant and House, they were indicted by the grand jury for the murder of Waters on October 7, and arraigned on October 25. Defendant requested and was granted a separate trial which commenced on February 20, 1964.

At trial two occurrence witnesses, Sedgie Watts and Malik Wynn, testified that on the morning of September 3,

1963, they, defendant and House, met on the back porch of an apartment located at 3604 Douglas and talked for some time. The four left together, Wynn testifying that it was about 2:30 A.M. and Watts being uncertain as to time, and walked west on Douglas Boulevard toward Independence Boulevard until they reached the base of a large statue located in the parkway between the traffic lanes. While standing on the south side of the statue a man, unknown to Wynn and Watts, walked past them. Both witnesses testified that defendant requested them to remain by the statue while he and Lopez House approached the stranger who they estimated was then about 150 feet west of them. They further testified that they heard defendant ask the stranger for a cigarette and then announce "this is a stickup", that the stranger turned away from defendant, prompting House to exclaim "burn him", and that they saw defendant fire a gun at the man, whereupon they all ran back to the porch at 3604 Douglas. Watts and Wynn also stated that while defendant and House returned to the scene to determine if the man defendant had shot at was dead, they went to the home of a girl friend, and that there, hours later, they again met defendant who instructed them to take the gun and deliver it to Clifton Ellison for safe keeping, which they did.

Clifton Ellison testified that on the morning of September 3, 1963, Wynn and Watts came to his house with a gun which he identified as defendant's, having seen it on several previous occasions, that later that morning Jordan came to his home and told him that he had shot a man in the head on 14th Street, and that he had returned to the scene and told a lady to call the police. Ellison further testified that he saw Jordan at 10:30 P.M. that night and he again admitted having killed a man. This admission was corroborated by Perry Ellis, a sixteen-year-old in the custody of the Illinois Youth Commission, who stated under oath that he had a conversation with defendant in the presence of Clifton Ellison wherein defendant said that "he burned the

dude" down on Douglas Boulevard west of the statue, and that Lopez House was with him while "Cowboy" Watts and "Cimoli" Wynn waited at the statue. Ellis further stated that at noon on September 5, 1963, he accompanied defendant to his own home where Jordan tried to sell a gun, which Ellis knew to be Jordan's, to his (Ellis's) mother. She declined and later that day he went with defendant to the residence of Henry Fly who did purchase the gun.

Both Ellis's mother and Fly corroborated the above occurrences, Fly stating that he purchased a gun from defendant in the presence of Perry Ellis on September 5 and the next day gave it to one Marie Carter from whom the gun was ultimately recovered by the police. This gun was admitted into evidence as People's Exhibit No. 1, and identified by Watts and Wynn as the gun defendant had in his possession before and during the shooting, and by Ellis, his mother and Fly as the one defendant was trying to sell. Jordan denied the commission of the crime and introduced an alibi as his defense.

We find no reason to consider defendant's argument that the failure to appoint counsel until six weeks after his arrest transgressed his constitutional rights since there is nothing in the record before us or in defendant's brief to indicate that he was prejudiced in any manner at a preliminary hearing, if there was one, at an inquest, if he was required to attend, or at any time prior to his arraignment.

In support of his contention that the State failed to prove him guilty of murder beyond a reasonable doubt, defendant, while conceding that the *corpus delicti* has been adequately established, asserts that the evidence did not clearly establish that the decedent and the person he shot at were one and the same.

Based on the foregoing facts set out herein, and an examination of the record, we cannot agree with defendant, as we find overwhelming evidence linking him with the crime as charged in the indictment. Two occurrence wit-

nesses testified to seeing him fire a gun at the back of a man's head at a location where the body of decedent was found with a bullet hole through the back of his skull. While defendant attacks this testimony as incredible, contradictory and improbable, there is no real basis in the record to discredit it. The witnesses were not, as defendant argues, accessories to the crime. Furthermore, while contradictions exist in their testimony as to nonmaterial events that happened prior to and subsequent to the crime, these factual discrepancies do not vitiate the credibility of the witnesses' entire testimony. The record as a whole discloses that the testimony of both witnesses was substantially the same, and, as to the material facts of the case, what transpired at or near the statue, was completely free from contradiction. Certainly, contradictions and inconsistencies concerning particular details of no consequence can be expected when relating an event that transpired weeks or months in the past; hence, the discrepancies here, being of slight degree and relevance, do not, as defendant further argues, indicate that the above testimony was patently false. Therefore, it is clear that the jury could have validly based its verdict on this testimony, and that such testimony alone accompanied by the *corpus delicti* could support a conviction of murder. *People* v. *Ashley*, 18 Ill.2d 272.

Furthermore, other cumulative evidence reinforces this finding. The proximity of the discovery of decedent's body in relation to the eye witnesses' estimated time of the shooting, the defendant's presence at the discovery of the body, and his possession of a gun when the shooting occurred, are all adequate circumstances identifying him with the murder. Moreover, two other witnesses testified to his admission to guilt of the shooting. We therefore find that the evidence supports a verdict of guilty beyond a reasonable doubt.

We turn now to a consideration of defendant's contention that he did not receive a fair and impartial trial be-

cause the conduct of the assistant State's Attorney throughout the trial and in his final argument was prejudicial.

Referring to the alleged misconduct during the trial, defendant complains that a police plat of the scene of the crime which he subpoenaed was tardily delivered, that a witness testifying in defendant's behalf to certain pertinent distance measurements involved in the case was unduly cross-examined, and that the prosecution made or elicited prejudicial statements from various witnesses, *viz.:* an admonishment to a police officer inferring that there were certain things to which he could not testify, a statement by another witness, a police officer, that he "lodged" an arrest warrant against defendant in the county jail, and testimony by the decedent's mother that the victim had a wife and child. The alleged prejudicial errors in the closing statement were a comment that defendant was inventing a defense, an inference that defendant had to present a defense against the State's case, the mention that decedent was loved by his family just as famous men are loved by their families (made three months after the assassination of President Kennedy), an inference that the prosecutor expressed his personal belief in the truth of the testimony of the State's witnesses, and mention that a particular occurrence witness was uncalled by defendant, creating an inference that he did not call every witness who knew about the transaction and should have done so.

While it would be improper for the State's Attorney or police to intentionally delay the production of evidence subpoenaed by the defense, the record does not disclose any such deliberate delay here. Furthermore, it was available but counsel failed to ask for it in time and, when the plat was ultimately produced, it served no useful purpose since it did not describe the streets, statue or building in question. We find no prejudice to defendant resulting from the delay, if any, occasioned in producing the plat. We also find the cross-examination of the defense witness who made some

measurements of distances at the scene was proper since the reference points of the measurements, the place near the statue where the boys were standing, and the spot where the victim was shot, had not been established and, moreover, since the witness's method of measurement was imprecise. In our judgment, the admonishment to the police officer inferring that there were certain things to which he could not testify, and the statement that defendant's arrest warrant was "lodged" in the county jail, did not prejudice defendant's cause. The former remark was proper and did preclude error since it was directed at preventing the witness from volunteering any information regarding a joint statement taken from defendant and House which was inadmissible and could have prejudiced defendant. The latter statement was inadvertently elicited in the context of determining whether the warrant was executed. Defendant's immediate objection was sustained and the matter was not pursued further. In our opinion the jury could not have drawn any inference detrimental to defendant's interest from this statement standing alone and therefore no error was committed in this regard.

The testimony regarding the victim's family occurred on redirect examination and was as follows:

"Q. Was he married?

A. Yes, he was.

Q. Did he have any children?

A. He had one son.

Mr. Porter: Thank you."

Defendant did not object but further brought out on recross examination that the victim had another child by his common-law wife to which testimony the prosecution's objection was sustained and the jury was instructed to disregard it.

In conjunction with the above, we must consider the prosecution's remark in final argument that: "And I might

point out something here. Mr. Carrabotta [defense counsel] says shame on the State for qualifying you for the death penalty. Well, I don't think there is any difference between killing poor Mr. Waters and killing some celebrity. It doesn't make the killing any less. Mr. Waters is just as loved by his loved one [sic] as any great figure in this country, and murder is murder."

Defendant argues that these statements constitute reversible error relying on our decisions in *People* v. *Bernette,* 30 Ill.2d 359; *People* v. *Dukes,* 12 Ill.2d 334; and *People* v. *Washington,* 54 Ill. App. 2d 467.

It is axiomatic that a defendant's guilt must be established by competent evidence uninfluenced by bias and prejudice, and that therefore evidence that a murder victim has left a spouse or children is inadmissible since it does not enlighten the trier of fact as to the guilt or innocence of the defendant or as to the punishment he should receive, but only serves to prejudice and inflame the jury. Generally, the rule is that "* * * where testimony in a murder case respecting the fact the deceased left a spouse and family is not elicited incidentally, but is presented in such a manner as to cause the jury to believe it is material, its admission is highly prejudicial and constitutes reversible error unless an objection thereto is sustained and the jury instructed to disregard such evidence. In like manner, we have held that jury argument by the prosecution which dwells upon the decedent's family or seeks to relate a defendant's punishment to the existence of family is inflammatory and improper." (*People* v. *Bernette,* at 371.) That case also held that "* * * the irrelevancy and highly prejudicial nature of such evidence is so well established, that it was the duty of the court in a murder case to have refused it on its own motion." *Bernette* at 372.

However, every mention of a deceased's family does not *ipso facto* entitle the defendant to a new trial, since in cer-

tain instances, dependent upon the facts, such a statement can be harmless. *People* v. *Golson,* 32 Ill.2d 398; *People* v. *Brown,* 30 Ill.2d 297.

In our opinion the case at bar is such an instance since significant factual distinctions exist between this case and the cases cited by defendant supporting reversal. A close reading of those latter cases reveals that the prosecution did more than just make the jury aware of the irrelevant fact that the victim left a spouse and children. Rather it dwelt upon and embellished this statement to the extent that the jury could well have related this fact to the question of defendant's culpability. Furthermore, in those cases the jurors' attention was again drawn to the testimony concerning the victim's family in an inflammatory final argument calculated to sway them from a rational evaluation of the facts of the case. Conversely, herein the testimony was not accompanied by statements dwelling upon the tender age of the orphaned children nor by an inflammatory final argument. In view of this, and the overwhelming evidence of defendant's guilt, we find that the statement here, while erroneous, was harmless and did not deprive the defendant of a fair and impartial trial. And further, with respect to the charge that the prosecution made prejudicial remarks in its closing argument, we find, after reviewing the final arguments of both parties and examining the particular statements in context, that these remarks were not prejudicial.

Defendant finally argues that the actions of the prosecution interfered with his preparation for trial and imposed additional burdens on him at trial thereby prejudicing his case and denying him effective aid and assistance of counsel. Specifically, he assigns error to the prosecution's opposition to a severance, failure to list four witnesses who were allowed to testify and delay in the delivery of police records. Initially, defendant contends that his trial counsel, due to the prosecution's opposition to his motion for severance, was unprepared to go to trial on a severed basis. How-

ever, defense counsel had no right to rely on the prosecution's continued opposition to the severance and cannot blame the State for the consequences of his own motion. Moreover, the record indicates that defense counsel was adequately prepared for the ensuing separate trial and therefore we find no prejudice to defendant in this regard. Secondly, allowing unlisted witnesses to testify is within the discretion of the trial court and in the absence of a showing of surprise or prejudice, that discretion will not be reviewed. (*People* v. *Hopkins,* 29 Ill.2d 260; *People* v. *Welch,* 22 Ill.2d 558.) We find that the defendant was not shown any unfairness in allowing these witnesses to testify. Moreover, we note that defense counsel was given an opportunity to interview the unlisted witnesses and did not ask for a continuance but proceeded with the trial. Thirdly, all records that were relevant and not hearsay were delivered before any witness whose statement was contained therein testified. Considering all of the alleged improprieties both individually and collectively, we find neither the occurrence of prejudice nor the denial of effective assistance of counsel.

For the reasons stated, we find the conviction of the defendant was based on proof sufficient to show his guilt beyond a reasonable doubt and that he was given a fair and impartial trial free of reversible error while being accorded his constitutional rights. We hereby affirm the judgment of the circuit court of Cook County.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.