THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUBEN MILLAN, Defendant-Appellant.

First District (4th Division)   No. 62245

Opinion filed March 24, 1977.—Rehearing denied April 21, 1977.

Alan D. Blumenthal, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and John J. Murphy, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

At 3:30 a.m. on June 8, 1973, James Copeland was shot four times as he stood on a street corner talking to friends. Defendant, Ruben Millan, was indicted for this crime, being charged with attempt murder and two counts of aggravated battery. Co-defendant, James Riviera, was charged with attempt murder and plead guilty on February 21, 1975. Defendant's jury trial began May 12, 1975. He was found guilty of all three counts. The trial court vacated the convictions for aggravated battery and sentenced defendant to a term of eight to 25 years imprisonment.

For the reasons hereinafter set forth, we reverse the conviction for attempt murder.

THE STATE'S CASE

At trial, Copeland and Riviera were the only witnesses who positively identified defendant as the assailant. Copeland testified that on June 8,

1973, at approximately 3 a.m. he was talking with two friends, Edward Ramos and Ephriam Perez, on the sidewalk at Fairfield and Augusta Streets. He noticed that defendant, whom he had seen on numerous occasions, was several feet behind him, leaning against a car. During the course of his conversation, Copeland glanced at defendant, who appeared to be staring at him.

Copeland turned around once again when he heard noises and saw defendant and Riviera arguing with each other. Copeland resumed his conversation, but soon turned around again. He saw Riviera pass a gun to defendant, who began walking towards him. Copeland turned away, but soon felt something against the back of his head. He heard a gunshot and fell to the ground.

Copeland looked up to see defendant standing over him, pointing a gun. He kicked at defendant, at which point defendant again fired, hitting Copeland in the shoulder. Copeland was getting to his feet when another shot struck him in the side, and a fourth hit him in the back as he started to run away. Two more shots were fired but did not hit him. Copeland was taken to the hospital, where he remained for seven weeks.

After being released from the hospital, Copeland accompanied police as they drove through the neighborhood seeking his assailant. This search proved fruitless. Copeland testified that, at a later date when he was driving alone, he had seen his attacker. The suspect fled when he stopped his car near him.

Copeland was returning from a trip when he had occasion to see defendant again. He called the police who had him lie down in the backseat area of the police car and took him back to the place where he had seen his assailant. After Copeland described his attacker to the police, they got out and arrested defendant. Defendant appeared startled when he saw Copeland.

Chicago Police Officer Joseph Price testified that he and his partner spoke to James Copeland on August 11, 1974, after which they drove to Fairfield and Augusta with Copeland concealed in the rear seat area of the police car. The officers left their vehicle and arrested defendant.

Over objection of defense counsel, James Riviera was called as a witness during the State's case in chief. The basis for the objection was that Riviera's name had not appeared on the State's list of witnesses. On Friday, May 9, 1975, shortly before trial was to commence, the State sought to add Riviera's name to its list of witnesses. Defense counsel requested a continuance because of his surprise at the addition of Riviera as a witness, and to give counsel time to obtain a transcript of the proceedings wherein Riviera plead guilty. At that point, the assistant state's attorney represented that "to expedite matters, we will simply withdraw his name and not use him in our case in chief."

On the following Monday, a transcript of the Riviera hearing was furnished to defense counsel. The assistant state's attorney reiterated that "[a]s we indicated on Friday, I stated categorically and emphatically we'll not be calling the co-defendant, James Rivera [*sic*] to testify in our case in chief." The State further indicated that it might call him on rebuttal, and that "our naming the witness last week was simply a—slip-up on our part."

The next day, after trial had commenced, the State once again sought to add Riviera as a witness during its case in chief. Defense counsel's objection was overruled, and after defense counsel interviewed him, Riviera was allowed to testify. Riviera testified that he handed a gun to defendant shortly before defendant put the gun to Copeland's neck and started shooting. Riviera stated that the reason defendant shot Copeland was that they were each members of a rival gang.

On cross-examination, Riviera stated that he had prior convictions for manslaughter, robbery and two narcotics violations. He stated that he was surprised when the prosecutor in the present case came to see him. At that meeting, Riviera was told that the prosecutor would write a letter to the Parole Board in an attempt to gain parole for him at the earliest time. Riviera decided to testify after this conversation.

## The Defendant's Case

Felix Vargas testified that defendant came to his home at about 11 p.m. on June 7, 1973, and stayed until 5 a.m. the following day. To refute this testimony, the State called Bruce Roth and Richard Salzman as rebuttal witnesses. Roth, an assistant state's attorney, testified that he spoke with Vargas at his place of employment on May 9, 1975, and that Vargas had stated to him that he could not remember whether he had been with defendant on June 8, 1973. Salzman testified that he was the assistant personnel director where Vargas worked and was present during the conversation between Vargas and Roth. He corroborated Roth's account of that conversation.

Vargas's wife, Anna Colon, testified for the defense. She stated that defendant had been at their home the evening of June 7, 1973, and had remained until the next morning. On cross-examination, she admitted that she had told an assistant state's attorney that it was difficult for her to remember the exact date defendant had been over to her home.

Edwin Ramos testified that only he, Perez, Copeland and Riviera were on the corner at the time of the shooting. He stated that although he was standing next to Copeland, he "didn't get exactly a good look, you know, but to my knowledge it had to be James [Riviera]" who shot Copeland.

Chicago Police Officer Ronald Goscinski testified on rebuttal that he spoke with Ramos and Ephriam Perez on the morning of June 8, 1973.

During that conversation, Ramos had told him that two men were involved in the shooting.

Defendant testified that he was at the Vargas home from 11 p.m. on June 7, 1973, and stayed until 5 a.m. the next day. He denied shooting Copeland, or even seeing him prior to trial.

OPINION

Supreme Court Rule 412 provides that the State shall, upon motion of the defense, disclose the names and last known addresses of the persons whom the State intends to call as witnesses, together with their relevant written or recorded statements. (Ill. Rev. Stat. 1973, ch. 110A, par. 412(a)(i).) "By requiring disclosure prior to trial, it is hoped that the fruits of discovery can be harvested. Or in the event the parties have been unable to arrange a guilty plea or a dismissal, the disclosure assures defense counsel adequate time to prepare. Pre-trial disclosure of this nature not only affords defense counsel adequate opportunity to investigate the case, but also ensures the end of untimely interruptions at trial occasioned by disclosures of statements at trial." Ill. Ann. Stat., ch. 110A, par. 412(a)(i), Committee Comments, at 679 (Smith-Hurd 1976).

■■ It is within the discretion of the trial court to allow a previously unlisted witness to testify at trial. However, a reviewing court will find an abuse of discretion when the record demonstrates surprise or prejudice to the defendant. *People v. Jordan* (1967), 38 Ill. 2d 83, 230 N.E.2d 161; *People v. Frisco* (1972), 4 Ill. App. 3d 1034, 283 N.E.2d 277.

■■■ In the instant case, we find no justification for the State to wait until trial had commenced to disclose its intention to call Riviera as a witness. Riviera had entered a plea of guilty almost three months before defendant's trial had begun. Although the witness had decided to testify only a short time before trial, this does not mitigate the State's duty to disclose at the earliest opportunity, so that the defense could be afforded sufficient time to prepare. Allowing a hurried interview with the witness during trial is not a satisfactory substitute for prompt compliance. Defense counsel should have been allowed ample time to prepare for the witness in order to afford defendant effective assistance of counsel. (*People v. Jordan* (1967), 38 Ill. 2d 83, 230 N.E.2d 161.) Disclosure in advance of trial would have accomplished the ends which Rule 412 sought to achieve. Adequate time to prepare is essential to assure a fair trial to both the prosecution and the defense. Without sufficient time for preparation, disadvantage and errors are induced which erode the guarantee of a fair trial.

We recognize that there may be situations where the State is unable to disclose, in advance, its intention to call a witness. However, the record in the present case indicates what approaches to be a deliberate design by

the State to withhold disclosing its intention to call Riviera as a witness. The State itself characterized its initial disclosure as a "slip-up." We find that Riviera's testimony, coming after the State's emphatic representations that it would not call him during its case in chief, surprised the defense and borders on bad faith. (*Cf. People v. Armour* (1970), 133 Ill. App. 2d 126, 263 N.E.2d 889.) Although defense counsel was allowed an opportunity to interview Riviera during trial, the State's conduct prejudiced the preparations of the defense for Riviera's highly damaging testimony concerning defendant's motive for the shooting. The trial court should have excluded the witness.

Furthermore, we note that the victim would have been the only witness to positively identify defendant as the assailant had Riviera not been allowed to testify. While a conviction may be supported by the testimony of a single witness (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Jennings* (1976), 37 Ill. App. 3d 982, 347 N.E.2d 421), much of the content of Copeland's testimony would have been inadmissible without Riviera's testimony.

■■ The State concedes that it is error to admit testimony concerning an out of court identification to bolster the identification of a defendant made by a single witness when it is not supported by other corroborative evidence. (*People v. Wright* (1965), 65 Ill. App. 2d 23, 212 N.E.2d 126; *cf. People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.) Riviera's testimony corroborated Copeland's identification and also served as the basis for allowing Copeland to bolster the State's case by testifying about his out-of-court identifications of defendant. These circumstances compel us to conclude that Riviera's improperly admitted testimony was error which requires the reversal of defendant's conviction.

For the aforementioned reasons, the judgment of conviction is reversed and the cause remanded for a new trial.

Reversed and remanded.

DIERINGER, P. J., and ROMITI, J., concur.