THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PHILLIP D. SCHUTZ, Defendant-Appellant.

Fourth District   No. 4—89—0301

Opinion filed August 16, 1990.

Daniel D. Yuhas and John J. Hanlon, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Beth McGann, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

On January 19, 1989, defendant Phillip Schutz was found guilty by a jury sitting in the circuit court of Vermilion County of committing the offense of armed robbery. (Ill. Rev. Stat. 1989, ch. 38, par.

18—2.) He subsequently received a 14-year prison sentence. Defendant now appeals.

Defendant and three compatriots were charged with committing an armed robbery of the China Garden restaurant on September 11, 1988. Jeff Wong, the owner, testified that on September 11, at approximately 8:30 p.m., after the restaurant had closed, he was at the cash register when two men approached. One wore a ski mask and one wore a stocking over his head, and they carried a knife and a sawed-off shotgun. They took Wong back to the kitchen, where his employees and his five-year-old niece, as well as two other masked men, were located. They were then placed in the kitchen's walk-in cooler.

Two of the men then took Wong to the upstairs apartment where his sister and 71-year-old mother-in-law lived. During this time, they had the knife placed against Wong's neck. They brought the women down and placed them in the cooler. One of the men then started demanding to know where the safe was located. When Wong told them there was no safe, the robber became upset and threatened to kill him. Eventually the robbers took the money in the cash register, the money and jewelry from the apartment, and jewelry which the victims were wearing (including Wong's watch). The robbers left after placing a mop against the walk-in door.

Next to testify was Diana Ross, a former waitress at the China Garden. She is a cousin of codefendant Scott Pfeifer and became acquainted with defendant through him. In the early part of September 1988, she and Mary Nier went to room No. 9 at the Page Motel to meet with defendant and Pfeifer. During that time, a conversation came up concerning details of the China Garden's operations. Defendant and Pfeifer showed Ross a sawed-off shotgun and a knife.

A week prior to the robbery, defendant telephoned Ross and told her they were going to rob the restaurant. She thought he was joking. The day of the crime, he again called with the same message. Around 1 a.m. she received a call from Pfeifer directing that she and Nier meet him and the defendant. Defendant and Pfeifer told Ross and Nier that four of them had gone into the restaurant wearing masks, and that they had burned their clothing afterward. Pfeifer did most of the talking. They eventually ended up at the motel where Pfeifer and defendant showed them the stolen property. Ross recognized a watch belonging to Wong. They then told the story in greater detail. They explained the people were put in the cooler, that the little girl was given a coat, that they helped an old lady down the stairs, and that a knife was held to Wong's throat. The next day she

went with Pfeifer and defendant when they purchased a car from Dorothy VanCamp.

VanCamp testified she sold a car on Monday, September 12, 1988, and she identified defendant as being one of the purchasers. She remembered the other man's name was Scott Pfeifer. George Wright, the owner of Page Motel, testified that Pfeifer and defendant rented room No. 9 from September 2 to September 16, 1988. He remembered seeing them around 7 p.m. on Sunday, September 11, when they left with two other men. The other men had trouble with their car, which was eventually towed. He saw these four men return at 9:30 p.m. After they moved out, he entered the room and found a spring-loaded handgun.

The State's final witness was codefendant Celedonio Rodriguez. On September 9, 1988, he and Jerry Aguirre met with Pfeifer and defendant in the motel room. They discussed robbing the restaurant. On Sunday, at approximately 7 p.m., he and Aguirre returned to the motel. When they arrived, Rodriguez's car broke down. They left after Pfeifer gave them their masks, which were two nylons and two ski masks. When they arrived at the restaurant, they went in the back door. Between them they had a knife, a sawed-off shotgun, and a "toy" gun. He identified the gun recovered by Wright as the "toy" gun. He then related the details of the robbery. This testimony was substantially similar to Wong's. He and defendant stayed by the cooler the entire time, while Pfeifer and Aguirre went upstairs. They then went back to the motel and he received $500.

On cross-examination, he admitted telling the police a different story at an October 10, 1988, interview. He stated he was scared and said he told the truth on October 14. He also admitted he pleaded guilty to robbery in return for his testimony, and that it was his understanding he now had a chance for probation rather than a mandatory prison sentence. A stipulation was then entered into, which provided that on October 14 Rodriguez gave the police a statement which is substantially similar to his trial testimony.

Defendant presented an alibi defense. His mother testified he was with her all day and night on September 11, 1988, and, in fact, went with her to the weekly bingo game, which took place at the time of the robbery. His grandmother and her friend also testified to his presence at the bingo game. Defendant acknowledged living with Pfeifer at the motel, but stated he spent September 11 at his mother's house. The next day, he went with Pfeifer to purchase a car. Later that week, Pfeifer confessed to him that Pfeifer committed the robbery. Defendant denied any involvement.

After a short deliberation, the jury found defendant guilty. The court subsequently imposed the 14-year sentence. Defendant now appeals, alleging (1) Rodriguez should not have been allowed to testify; (2) he received ineffective assistance of counsel; (3) the jury instructions were erroneous; and (4) the court considered improper aggravating factors at sentencing. We affirm the conviction and sentence, and remand for the filing of a mittimus showing a sentence credit to which defendant is entitled.

Defendant's initial contention is that the court erred by allowing Rodriguez to testify. The record shows that Rodriguez was not listed as a witness on the State's pretrial discovery, nor was he listed as a prospective witness for the jury selection process. After the commencement of defendant's trial, Rodriguez entered a negotiated plea which required his testimony. Defendant's counsel was notified immediately over the noon hour, and counsel objected to the testimony. The court indicated Rodriguez could not testify until counsel had ample opportunity to interview him. Apparently this opportunity was afforded, and the next day he did testify. Defendant still believes he should not have been allowed to do so.

■■ Supreme Court Rule 412(a)(i) (107 Ill. 2d R. 412(a)(i)) provides that, as part of the pretrial discovery, the State, upon request by defendant, shall supply defendant with names of persons whom the State intends to call as witnesses. The purpose of this rule is to prevent surprise and afford an opportunity to combat false testimony. (*People v. Steel* (1972), 52 Ill. 2d 442, 450, 288 N.E.2d 355, 360.) However, noncompliance with discovery requirements does not require reversal absent a showing of prejudice. *People v. Greer* (1980), 79 Ill. 2d 103, 120, 402 N.E.2d 203, 211.

Allowing an unlisted witness to testify is within the discretion of the trial court and, absent a showing of surprise or prejudice, that discretion will not be reviewed. (*Steel*, 52 Ill. 2d at 450, 288 N.E.2d at 360; *People v. Jordan* (1967), 38 Ill. 2d 83, 93, 230 N.E.2d 161, 167.) The burden of showing surprise or prejudice is on the defendant. (*Steel*, 52 Ill. 2d at 450, 288 N.E.2d at 360; *People v. Raby* (1968), 40 Ill. 2d 392, 401-02, 240 N.E.2d 595, 601.) In the present case, Rodriguez is a codefendant who was charged with his involvement in the crime three months prior to the trial. Defendant had been supplied copies of Rodriguez's statement with the State's discovery answer. Under such circumstances, we conclude that defendant cannot complain of surprise.

■ Neither do we find defendant was prejudiced. The courts have repeatedly found no prejudice occurred where the defendant

had an opportunity to interview the witness and did not ask for a continuance but proceeded to trial. (*People v. Welch* (1961), 22 Ill. 2d 558, 561-62, 177 N.E.2d 160, 162; *Jordan*, 38 Ill. 2d at 93, 230 N.E.2d at 167.) In *Steel*, the court stated:

> "Here defense counsel was afforded an opportunity to interview the witness and he did not specifically request a continuance. Moreover, the record indicates the State offered defense counsel a copy of this witness's prior statement. Under these circumstances we do not believe that defendant was prejudiced." (*Steel*, 52 Ill. 2d at 450, 288 N.E.2d at 360.)

Similarly, in the present case, counsel did not request a continuance. He did avail himself of the opportunity to speak with Rodriguez. Also, copies of Rodiguez's statements had previously been supplied to defendant as part of the State's discovery answer, and the record establishes that counsel was familiar with them.

Defendant disagrees and insists such prejudice was shown. He relies on the decisions in *People v. Millan* (1977), 47 Ill. App. 3d 296, 361 N.E.2d 823, and *People v. Mourning* (1975), 27 Ill. App. 3d 414, 327 N.E.2d 279, for the proposition that a short interview with the witness is not a satisfactory substitute for prompt discovery compliance. However, those cases are predicated on their facts, which establish the State's conduct in not disclosing the relevant names bordered on bad faith. They are inapplicable to the present case, since there has been no discovery violation on the part of the State.

Rule 412 requires the State to provide a list of witnesses it *intends* to call. Here it is clear, based on the statement he had given, the State would like to have Rodriguez as a witness. However, it is similarly clear that until he pleaded guilty, the State could not use him in that fashion. Thus, it cannot be concluded the State intended to call him as a witness until he pleaded guilty. Once he did, the State promptly notified defendant. Therefore, the bad faith evident in *Millan* and *Mourning* is not present here.

Accordingly, since there was no surprise and defendant cannot establish prejudice, we conclude the court did not abuse its discretion in allowing the testimony.

Defendant's second assertion of error is that he received ineffective assistance of counsel. More specifically, he complains of the act of counsel in entering into the stipulation concerning a prior consistent statement given by Rodriguez. After Rodriguez's testimony, the stipulation, which was presented by the court, provided that on October 14, 1988, Rodriguez gave a statement to the police which "was substantially consistent with the statement he has given in open

court today." The court then admonished the jury that this stipulation was only to be considered in regard to Rodriguez's motive to testify falsely. Defendant believes this decision of counsel was improper, because the prior consistent statement is inadmissible and this evidence gravely prejudiced him.

■ The United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, formulated a two-part test for evaluating whether a defendant has received ineffective assistance of counsel. Defendant must first demonstrate that counsel's performance was deficient. (*People v. Owens* (1989), 129 Ill. 2d 303, 309, 544 N.E.2d 276, 278.) Defendant must also prove that his counsel's deficient performance substantially prejudiced his defense. (*Owens*, 129 Ill. 2d at 309, 544 N.E.2d at 278.) To meet this second test, a defendant must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

■ It is upon this second prong that defendant's argument fails. Defendant maintains the stipulation bolstered Rodriguez's testimony, which was crucial to his conviction, by refuting the allegation that Rodriguez was testifying falsely in order to get a good deal. However, it is not only this stipulation which bolstered Rodriguez's testimony. Rodriguez's testimony confirmed details of the crime as related by Wong. Also, the testimony of Ross, as well as Wright, supports many of the incidents related by Rodriguez. Thus, even without this stipulation, the jury could reasonably conclude that Rodriguez was testifying truthfully. We conclude therefore that, even if counsel was mistaken in entering into the stipulation, defendant has failed to establish there is a reasonable probability of a different result. Accordingly, we find no merit to his ineffective assistance claim.

■ Further, the stipulation was properly admitted as a prior consistent statement. The general rule is that proof of a prior consistent statement by a witness is admissible to rebut a charge or inference of a recent fabrication or motive to testify falsely, provided the statement is made before the alleged motive to fabricate existed. (*People v. Ashford* (1988), 121 Ill. 2d 55, 71, 520 N.E.2d 332, 338, *cert. denied* (1988), 488 U.S. 900, 102 L. Ed. 2d 234, 109 S. Ct. 246.) Here, Rodriguez gave the October 14 statement after he was arrested for the instant offense. Defendant, relying on our decision in *People v. Green* (1984), 125 Ill. App. 3d 734, 466 N.E.2d 630, argues this statement was given after the motive to fabricate existed. How-

ever, as we recently pointed out, subsequent supreme court cases have raised questions about the *Green* holding. (See *People v. Eichelberger* (1989), 189 Ill. App. 3d 1020, 1032, 546 N.E.2d 274, 281-82.) We now conclude, upon further consideration, that *Green* is no longer viable in this regard.

■■ In our present case, Rodriguez, after his arrest, contacted the police and gave the statement indicating he wanted to tell the truth. This was given several months prior to the plea agreement which was the basis of the alleged inference of a recent fabrication. There is no evidence he was promised anything by the authorities for his statement. An analysis of those supreme court cases establishes that the statement was properly considered a prior consistent statement and the stipulation was proper. See *Ashford*, 121 Ill. 2d at 71-72, 520 N.E.2d at 338; *People v. Titone* (1986), 115 Ill. 2d 413, 422-23, 505 N.E.2d 300, 303-04.

Defendant next attempts to resurrect a previously answered question. He notes the jury instructions failed to include a mental state, and he maintains this is error. He acknowledges that in *People v. Talley* (1988), 177 Ill. App. 3d 170, 531 N.E.2d 1139, this court addressed this exact question and found no error. He asks us to reconsider. We, finding the issue properly laid to rest, decline to do so.

■ Defendant, relying on *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, further argues the court erred by considering aggravating factors which are implicit to the offense of armed robbery. Specifically, these are the factors that defendant's conduct caused or threatened serious bodily harm and that defendant received compensation for the crime. See Ill. Rev. Stat. 1989, ch. 38, pars. 1005—5—3.2(a)(1), (a)(2).

At the sentencing hearing, the court found in aggravation that defendant is a threat to society, his conduct caused or threatened serious harm, defendant received compensation for the offense, defendant was on probation for five burglary offenses at the time of the offense, a significant sentence is necessary to deter others, and a minimum sentence would mitigate the seriousness of the offense. The court found no mitigating factors present. Therefore, the court imposed a 14-year prison sentence.

Defendant argues the court improperly considered the threat of harm as an aggravating factor. He believes our opinion in *People v. Rhodes* (1986), 141 Ill. App. 3d 362, 490 N.E.2d 169, is controlling. There we observed that to the extent that serious harm is inherent in the offense, it may not also be used to enhance a prison sentence. (*Rhodes*, 141 Ill. App. 3d at 364, 490 N.E.2d at 170.) Thus, we held

that the mere presence of a dangerous weapon at an armed robbery should not be considered an aggravating factor.

However, defendant is reading the *Rhodes* opinion too broadly in applying it to this case. This is made clear in the supreme court opinion *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138, where the court considered the propriety of considering the causing or threat-of-harm factor in the context of a voluntary manslaughter conviction. The court concluded that it is appropriate to consider the degree of harm as an aggravating factor, even in those cases where harm is implicit in the offense. (*Saldivar*, 113 Ill. 2d at 269, 497 N.E.2d at 1143.) Thus, it is appropriate for the court to consider whether defendant's conduct threatened serious harm to a degree greater than that inherent to the offense. Here, the evidence showed a number of people, including a 71-year-old and a 5-year-old, were placed in the walk-in cooler, and efforts were made by defendant to bar the door. Further, Wong was repeatedly threatened and was forced up the stairs with a knife to his throat. This conduct is sufficiently more serious than that in the conventional armed robbery so as to be distinguishable from *Rhodes* and properly considered as an aggravating factor.

This, however, cannot be said of the fact defendant received compensation. In the present case, the compensation is the proceeds of the armed robbery. *Conover* is controlling, and this factor clearly should not have been considered.

However, it has been clearly established that reliance on an improper factor in aggravation does not always necessitate remandment for sentencing. (*People v. Bourke* (1983), 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340.) Where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required. (*Bourke*, 96 Ill. 2d at 332, 449 N.E.2d at 1340.) A review of the sentencing hearing establishes the court only mentioned the compensation factor in passing. As noted, a number of other aggravating factors were found present and relied upon. We conclude this factor did not lead to a greater sentence. Accordingly, remandment is not necessary.

■ Finally, defendant, observing no mittimus is contained in the file, expresses concern that he will receive credit for the 129 days he is entitled to. The circuit clerk is required to notify the Department of Corrections of a number of things, including the credit for days served a defendant is to receive. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1(e)(4).) While this most likely has been done, the rec-

ord does not reflect it. Accordingly, we must remand for the filing of the appropriate documents to ensure compliance.

Affirmed and remanded with directions.

GREEN and STEIGMANN, JJ., concur.