THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN D. GOODEY, Defendant-Appellant.

Fourth District    No. 4—91—0605

Opinion filed April 15, 1992.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In June 1991, a jury convicted defendant, Stephen D. Goodey, of delivery of a controlled substance (10 or more segregated parts of an object containing in them any amount of lysergic acid diethylamide (LSD)), in violation of section 401(a)(7)(ii) of the Illinois Controlled Substances Act (Act), and criminal drug conspiracy, in violation of section 405.1(a) of the Act (Ill. Rev. Stat. 1989, ch. 56½, pars. 1401(a)(7)(ii), 1405.1(a)). The trial court sentenced defendant to 7½ years in prison, a street-value fine of $300, and assessed a laboratory fee of $50. Defendant appeals, arguing that (1) section 401(a)(7)(ii) of the Act is unconstitutionally vague, (2) the State failed to prove him guilty beyond a reasonable doubt, (3) he is entitled to credit against his $300 street-value fine for the time he spent in the county jail, and (4) he is entitled to a new sentencing hearing.

We affirm and remand with directions.

## I. FACTS

Rick Miller, a Sangamon County deputy sheriff, was the State's sole witness at defendant's trial. Miller had been assigned for approximately four years to a United States Drug Enforcement Agency (DEA) task force operating in central Illinois. Miller had approximately 14 years of experience as an undercover officer.

On June 13, 1990, Miller arranged a meeting with defendant, Bill Stevens, Denise Niteuski, and Miller's informant at an address on Buena Vista Drive in Decatur for the purpose of buying LSD. The informant introduced Miller to the others present. Miller and defendant then talked openly in everyone's presence about Miller's interest in purchasing methenamine. Defendant said he had to go to work and led Miller to a bedroom to show him some crystals that defendant purported to be methenamine. Miller agreed to purchase the crystals from defendant and gave him $500. A later test revealed that this substance was not methenamine, but instead a noncontrolled substance Miller identified as "turkey."

After making this purchase, Miller told defendant that Miller understood defendant had some LSD for sale. Defendant responded that he had to go to work and Miller would have to talk to his "partner" about the matter, explaining that "his partner" also had LSD for sale. Miller testified that the "partner" defendant was referring to was Stevens.

At that point, Miller, Stevens, and the informant started negotiating for the purchase of LSD. They reached an agreement and then determined that either Stevens would have to get the LSD from the

house in which he lived on Evandale Street in Decatur and return to the Buena Vista house, or Miller would have to go to the Evandale house with Stevens. Defendant and Niteuski also resided at the Evandale house. Defendant was not a party to the negotiations about LSD, but after he was told that an agreement had been reached and Miller and Stevens had decided to go to Stevens' residence to get the LSD, defendant asked Stevens if he knew where the LSD was. Stevens said no, and defendant told Stevens "just to go to the house, go into [defendant's] bedroom to [defendant's] dresser, top dresser drawer, right side. That's where it would be at."

Defendant then left the Buena Vista house to go to work, and Miller and Stevens went to the Evandale house. Once inside, Miller sat in the front room while Stevens went to a bedroom. Miller testified that he could see a dresser drawer being pulled open, and shortly thereafter Stevens returned to the front room. Miller said he could only partly see the dresser Stevens opened, but Miller could tell it was the top drawer being opened. Stevens then sold Miller a plastic bag containing two separate sheets of perforated paper bearing designs of little airplanes. Miller testified that LSD is usually sold on a perforated piece of paper and that each individual square thereof was known as a "hit" or a "tab." He described the squares as quite small, usually about an eighth to a quarter of an inch square. He stated that the prices for these individual squares range from $.85 to $1.10, but they sometimes reach as much as $4 or $5. He also explained that an LSD user would tear the paper at the perforations and place the tab on his or her tongue. Stevens sold Miller 150 separate "hits" of LSD for $300. Miller took the sheets of paper back to the DEA offices, packaged them as evidence, and sent them to a laboratory for testing. The parties stipulated that those test results showed that the papers contained LSD.

Miller also testified that he was wearing a wireless transmitter on the waistband of his pants during all of the transactions on June 13 about which he testified. He had Federal authorization to do so. The transmitter was designed to look like a pager and did not itself record anything. However, for technical reasons that Miller could not explain, the recording that other law enforcement officers made from the transmissions from Miller's "pager" was mostly inaudible. At trial, Miller had difficulty identifying even his own voice on the tape.

Miller also testified that the substance he bought from defendant that Miller believed to be methenamine was tested and found to be a noncontrolled substance, or "turkey" as Miller described it during his testimony.

Niteuski testified for defendant and explained that as of June 1990, she had been living with him for approximately four years. She testified that she and defendant occupied the back bedroom of the Evandale residence and that the bedroom closest to the living room was not occupied by anyone. Niteuski testified that when Miller asked defendant at the Buena Vista residence about LSD, defendant responded that he did not know anything about it and Miller would have to talk to Stevens. Niteuski denied that defendant ever told Stevens where to find LSD at the Evandale residence. She also testified that she went with Miller and Stevens to the Evandale residence when Miller went there to buy LSD, and that Stevens went down the hallway to his bedroom while she and Miller sat on the couch in the front room. Niteuski testified that from where Miller sat on the couch, he could not see down the hallway into the bedroom to see someone open the dresser drawer.

Defendant testified on his own behalf and corroborated Niteuski's testimony about the layout of the Evandale residence and what can be seen from the front room. Defendant admitted that he had sold a substance to Miller that looked like methenamine but in fact was not. He claimed that he never supplied any information to Stevens about where Stevens could find the LSD at the Evandale residence, nor had he supplied Stevens with LSD or received any of the proceeds from Stevens' sale of the LSD to Miller. Defendant also denied being part of any conversation pertaining to LSD.

After hearing this evidence, the jury convicted defendant.

## II. Defendant's Argument That The Statute Under Which He Was Convicted Is Unconstitutional

The State charged defendant with violating section 401(a)(7)(ii) of the Act, in that defendant knowingly delivered to Miller "10 or more segregated parts of an object or objects containing in them or having upon them any amount of any substance containing [LSD]." (See Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(7)(ii).) Citing *People v. Dednam* (1973), 55 Ill. 2d 565, 567-68, 304 N.E.2d 627, 629, defendant argues that the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) requires a criminal statute to specifically warn of what constitutes the prescribed conduct, and that section 401(a)(7)(ii) of the Act does not provide that specificity because it fails to define "segregated parts of an object." We disagree.

Defendant made this same challenge at trial. In response, the State presented the testimony of Detective Jeff Busch of the Macon County sheriff's department, who also was assigned to the DEA task

force working in central Illinois. Busch testified that in his undercover work, he has purchased LSD on eight separate occasions and is familiar with its appearance and how it is commonly packaged. Busch testified that LSD is commonly sold as "blotter acid," meaning it is sold as the contents of one three- by three-inch piece of paper into which perforations have been punched. He explained that the entire paper is first "washed" in LSD, and then it is perforated and segregated into 100 "hits," also known as dosage units. Each unit is approximately one centimeter square and is torn from the rest of the paper by using the perforations. Busch described the perforations on the paper as similar to those found in an ordinary checkbook, making it easier to tear a check out.

After hearing this testimony and the arguments of counsel, the trial court denied defendant's motion to declare section 401(a)(7)(ii) unconstitutional, finding there was nothing vague about the terms used. The court further noted that it was unaware of any better terminology than that used by the legislature to describe the particular offense in question.

In *People v. McCreadie* (1991), 223 Ill. App. 3d 316, 318, 584 N.E.2d 839, 840, this court recently addressed another defendant's claim that a criminal statute was unconstitutionally vague under the fourteenth amendment to the United States Constitution and wrote the following:

> "In *Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294, the Supreme Court emphasized the important considerations in determining whether legislation proscribing conduct is void for being vague and indefinite as being whether (1) it gives reasonable guidance to the average person; (2) it is designed in such a way as to avoid arbitrary and discriminatory enforcement; and (3) whether sensitive first amendment rights are involved, thus requiring a higher standard of review. In the instant case, it is clear that no first amendment rights are involved. We need only consider whether the statute gives reasonable guidance to the average person and avoids arbitrary and discriminatory enforcement."

In *People v. Server* (1986), 148 Ill. App. 3d 888, 901, 499 N.E.2d 1019, 1028, this court also wrote the following:

> "It is well established that a statute, once enacted, is presumed constitutional and valid. (See *People v. Bales* (1985), 108 Ill. 2d 182, 483 N.E.2d 517.) Where possible, any doubts or uncertainties regarding the validity of the statute will be resolved in favor of the statute. [Citation.] A party challenging the valid-

ity of the statute has the burden of establishing a substantial constitutional violation. A statute will be held void for vagueness where the statute fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute or is so indefinite that it encourages arbitrary and erratic arrests and convictions. *Colautti v. Franklin* (1979), 439 U.S. 379, 58 L. Ed. 2d 596, 99 S. Ct. 675."

See also *United States v. Jackson* (7th Cir. 1991), 935 F.2d 832, 838; 1 W. LaFave & A. Scott, Substantive Criminal Law §2.3, at 126-29 (1986).

In *People v. Lowe* (1990), 202 Ill. App. 3d 648, 653, 560 N.E.2d 438, 441, this court further explained the void-for-vagueness doctrine as follows:

"Criminal statutes are inherently limited to words as their medium. For this reason, the impossible burden of mathematical certainty is neither expected nor imposed by either the Federal or State Constitution. [Citations.] When deciding a vagueness question, a court will assign the words of the statute their ordinary or popularly understood meaning, unless there exists legislative intent to the contrary."

■ Based upon the above authority, we are not persuaded by defendant's argument that "without a definition as to what a 'segregated part of an object' means, the language of the statute is not sufficient to apprise anyone of what constitutes a Class X felony with regards [*sic*] to manufacture or delivery of LSD." Instead, we agree with the State that the statute involved is drafted in consideration of the means by which LSD is currently packaged and sold. The State argues as follows:

"A sheet or blotter soaked with LSD obviously qualifies as an 'object ... containing LSD.' The 'object' obviously comes in 'segregated parts,' as evidenced by the testimony of perforated units on the sheet. They are set up that way for easy detachment or separation.

'Segregate' is defined as 'to separate or isolate from others or from a main body or group' in the *American Heritage Dictionary of the English Language* (1969). 'Segregation' is defined as 'the act or process of separation' in *Black's Law Dictionary* (5th ed. 1979)."

We agree with the State's argument and hold that section 401(a)(7)(ii) is not unconstitutionally vague.

### III. Sufficiency Of The Evidence

■ Defendant argues that the State's evidence was not sufficient to show that he either conspired with Stevens to deliver LSD or that he was accountable for the conduct of Stevens in delivering LSD to Miller. Defendant correctly points out that in order to prove him guilty of delivery of LSD on an accountability theory, the State had to prove beyond a reasonable doubt that before or during the LSD delivery, he solicited, aided, abided, agreed, or attempted to aid Stevens in the planning or commission of the delivery, and that defendant did so with the intent to promote or facilitate the LSD delivery. (See Ill. Rev. Stat. 1989, ch. 38, par. 5—2(c).) Defendant also correctly points out that (1) the only evidence against him was Miller's testimony, and (2) due to the poor quality of the tape recordings the police made of the conversations at the Buena Vista residence, those recordings failed to corroborate Miller's testimony regarding defendant's involvement in the LSD sale. Although all of these arguments are correct, we disagree with defendant's conclusion that the jury—which saw and heard Miller, as well as defendant and his long-time girlfriend, Niteuski—could not choose to believe Miller's testimony; further, we are satisfied that if the jury chose to believe Miller, his testimony was sufficient to prove defendant guilty as charged beyond a reasonable doubt.

In *People v. Frieberg* (1992), 147 Ill. 2d 326, 359-60, the Illinois Supreme Court recently wrote the following when addressing another defendant's argument that the evidence was insufficient to support a finding of guilt:

> "It is the jury's function to determine the accused's guilt or innocence, and this court will not reverse a conviction unless the evidence is so improbable as to justify a reasonable doubt of defendant's guilt. (*People v. Eyler* (1989), 133 Ill. 2d 173, 191[, 549 N.E.2d 268, 276].) '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; see also *People v. Collins* (1985), 106 Ill. 2d 237, 261[, 478 N.E.2d 267, 277].) In addition, it is for the jury to weigh the credibility of the witnesses and to resolve conflicts or inconsistencies in their testimony. (*People v. Phillips* (1989), 127 Ill. 2d 499, 514[, 538 N.E.2d 500, 505].)"

See also *People v. Clark* (1991), 221 Ill. App. 3d 303, 308, 581 N.E.2d 722, 726 (evidence sufficient to prove beyond reasonable doubt defendant's guilt as accomplice).

Based on the record in this case, we conclude as did the supreme court in *Frieberg*: "With these principles in mind, we do not believe that a reversal of defendant's convictions is warranted." *Frieberg*, 147 Ill. 2d at 360.

## IV. Sentencing Issues

■ Defendant argues, and the State concedes, that he is entitled to have his street-value fine of $300 reduced by credit of $5 per day for the 67 days he spent in custody prior to his sentencing. (See Ill. Rev. Stat. 1989, ch. 38, par. 110—14; see also *People v. Cameron* (1989), 189 Ill. App. 3d 998, 1011, 546 N.E.2d 259, 267.) Accordingly, he is entitled to $335 in credit against his fine of $300, and this cause is remanded to the circuit court with directions that the sentencing order be amended to reflect that the $300 street-value fine has been satisfied.

Defendant next argues that he is entitled to a new sentencing hearing because this court recently reversed his felony conviction for possession of cannabis in *People v. Goodey* (1991), 223 Ill. App. 3d 393, 584 N.E.2d 1021. Defendant argues that without this other conviction on his record, the trial court would have imposed a lesser sentence. We disagree.

Defendant was convicted of a Class X felony (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)), which requires a prison sentence of not less than 6 years and not more than 30 years (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3)). At defendant's sentencing hearing, the prosecutor argued for a 10-year sentence and specifically made reference to defendant's prior convictions for forgery and deceptive practices, as well as his prior conviction for felony possession of cannabis that this court later reversed. Defense counsel argued that a 10-year sentence would be excessive and suggested that the court instead impose a sentence of 7½ years in prison. The trial court then stated the following:

"In this particular case, I do agree with [defense counsel]. The Defendant does have some prior convictions and I'm not going to impose the period of 10 years. I'm going to sentence the Defendant to the Department of Corrections for a period of 7 and ½ years."

■ On this record, we agree with the State's characterization that the trial court placed no particular emphasis upon defendant's conviction for felony possession of cannabis and generally agreed with

defense counsel's assessment of the case. We note further that the court explicitly agreed with the sentence defense counsel suggested be imposed.

In *People v. Schutz* (1990), 201 Ill. App. 3d 154, 162, 559 N.E.2d 289, 295, this court held that a trial court's reliance at the sentencing hearing on an improper factor in aggravation does not always require remand for sentencing. "Where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required." (*Schutz*, 201 Ill. App. 3d at 162, 559 N.E.2d at 295.) As this court concluded in *Schutz*, we conclude in the present case that the trial court mentioned defendant's conviction for felony possession of cannabis only in passing, and then only as one of defendant's three significant convictions. We conclude that remandment for a new sentencing hearing is not necessary on this record.

IV. CONCLUSION

For the reasons stated, we affirm the judgment of defendant's conviction and sentence, and we remand to the circuit court with directions to enter an amended sentencing order in accordance with the views stated herein.

Affirmed and remanded with directions.

McCULLOUGH and LUND, JJ., concur.