*In re* MARRIAGE OF BARBARA M. BLITSTEIN, Petitioner-Appellee, and BERLE R. BLITSTEIN, Respondent-Appellant.

Second District   No. 2—90—0828

Opinion filed April 9, 1991.

Michael W. Kalcheim and Michael J. Berger, both of Kalcheim, Schatz & Berger, of Chicago, and Roger A. White, of Roger A. White & Associates, Ltd., of Lake Bluff (Andrew D. Eichner, of counsel), for appellant.

Howard H. Rosenfeld, of Rosenfeld, Rotenberg, Schwartzman, Hafron & Shapiro, of Chicago (Stephen H. Katz, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Respondent, Berle Blitstein (Berle), appeals from a protective order entered by the circuit court of Lake County pursuant to the Illinois Domestic Violence Act of 1986 (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 2311—1 *et seq.*). The order gave petitioner, Barbara Blitstein (Barbara), and her children exclusive possession of the marital residence and directed Berle not to abuse or harass them. Berle argues that the findings of the trial court concerning his conduct did not justify the entry of a protective order. Barbara argues that this appeal should be dismissed because the order in question is interlocutory and not appealable at this stage of the dissolution of marriage proceedings. We affirm.

Barbara and Berle resided in a 15-room house in Highland Park with their two children and Barbara's child from a prior marriage. In January 1990, Barbara filed two petitions for dissolution of marriage in the circuit court of Cook County. The initial petition was dismissed; the other case was transferred to the circuit court of Lake County, which was the proper venue.

On March 30, 1990, Barbara filed a petition for an order of protection in the circuit court of Lake County, which was assigned case No. 90—F—457. She alleged in the petition that Berle should be prohibited from remaining at the marital home because of an incident that took place on March 29, 1990, in which he allegedly harassed and physically abused her. The trial court entered an *ex parte* order of protection against Berle on March 30 which expired on April 12. On the latter date, the court entered an agreed order which stated that Berle would remain outside the marital home until a hearing was held on the petition. After Barbara's second dissolution filing was transfer-

red to Lake County, that case was consolidated with case No. 90—F—457.

The hearing on Barbara's petition for an order of protection commenced on July 12, 1990. Barbara testified that Berle had physically abused her three times prior to the March 29, 1990, incident. She stated that one day in the summer months of 1988, Berle punched her in the shoulder while they were arguing in their bedroom. According to Barbara, Berle pushed her against the bedroom wall during an argument in July 1989. She further testified that during an October 1989 argument, Berle grabbed her and threw her into some kitchen cabinets, injuring her shoulder. During his testimony, Berle denied physically abusing Barbara on any of these three occasions.

With regard to the events of March 29, 1990, Barbara testified that she and Berle were in bed watching television. Barbara asked Berle to turn off the television so she could go to sleep. When Berle refused, Barbara got up and turned the set off. She then started walking down the hall. Berle grabbed her, made some remarks, and then slapped her in the face.

According to Barbara, she then told Berle he would never hit her again and ran to the bedroom telephone, which was on a glass table at the side of the bed. She intended to call the police. Berle grabbed the phone out of Barbara's hand, pushed her onto the bed, and yanked the phone out of the wall. In so doing, he knocked over the glass table and broke some of the glass.

Barbara stated that she then ran to an adjoining sitting room and again attempted to call the police. Berle grabbed the receiver out of her hand, pushed her onto a couch, and yanked that phone out of the wall. Barbara tried to exit the room, but Berle closed the door leading to the hall when she tried to open it, and he blocked the exit for a few minutes. Barbara asked Berle to let her out, but he initially refused to do so, and he called her a bitch. Barbara then yelled for the couple's 12-year-old son, David, who started yelling, "[m]ommy, mommy." Berle then opened the door, and Barbara ran to the laundry room.

Barbara testified that she picked up the laundry room phone and tried to call the police again. Berle grabbed the phone out of her hands and pulled the cord from the wall. Barbara then ran into the maid's room, and David went in with her. She called the police from a phone in the maid's room. Two police officers arrived at the home shortly thereafter. Barbara and David left the house after this incident and temporarily stayed with one of Barbara's friends. Barbara

further testified that she had not been employed during the 15 years she had been married to Berle.

With regard to the events of March 29, 1990, Berle testified that he was watching television while in bed with Barbara late that evening. Barbara asked him to turn the set off at about 11:20, and he stated he wished to keep it on another 10 minutes. Barbara then got up and turned the set off. Berle testified that he then went into the adjoining sitting room to watch the television in there. While he was walking toward the sitting room, Barbara pushed him into the wall. She then hit Berle in the arms several times and screamed at him, telling him to go ahead and hit her. Barbara then picked up a bowl and threw it at him.

According to Berle, Barbara continued screaming at him, telling him to hit her so she could call the police and have him thrown out of the house. She then ran to the bedroom and said she was going to call the police. When she started to call, Berle pulled the cord from the phone box out of the wall. While doing so, he fell backwards into the nightstand but did not break any glass on it.

Barbara ran to the sitting room and tried to call the police again. Berle testified that he removed the phone jack from the wall outlet. Barbara and Berle both went to the sitting room door; Berle got there first and stood in front of it. Barbara was screaming, "David, David, daddy is beating me." Berle then heard David saying, "[m]ommy, mommy" from down the hall. Berle then opened the door, and Barbara ran down the hall. Berle tried to comfort David by telling him his parents loved him and everything would be all right. Barbara ran to the maid's room and called the police.

Berle stated that he did not slap or push Barbara at any time during the above incident. Berle also testified that Barbara appeared to be calm and calculated while the incident was taking place. Berle stated that his gross income was $360,000 per year.

Highland Park police officer Michael Gilbert testified that he arrived at the Blitstein home at about 11:40 on the evening of March 29, 1990. Barbara claimed that Berle had slapped her, but she did not state that he had physically assaulted her in any other manner. Officer Gilbert saw that the nightstand in the bedroom had been overturned. He did not see any broken glass, but it did appear there had been an altercation near the nightstand. Officer Gilbert noticed that phone cords in the bedroom, sitting room, and laundry room had been pulled from the wall; Berle admitted that he had done this. Officer Gilbert did not make an arrest because, based upon his observations, no assault or battery had taken place.

The trial judge found that Berle had not physically abused Barbara but also found that he had harassed her by pulling out the phone cords which caused her to suffer emotional distress. The judge also found that a risk of future abuse existed, noting that Berle came close to abusing Barbara physically when he blocked the doors in the sitting room and would not allow her to leave. Determining that, because of his income, it would be much easier for Berle to find a new residence than it would be for Barbara, the trial judge entered a protective order directing him to remain away from the marital home and prohibiting him from abusing or harassing Barbara or the children. The protective order will terminate when a final judgment is entered in the marital dissolution proceedings. Berle now appeals.

Barbara has filed a motion to dismiss the appeal which we have ordered taken with the case. Barbara argues that the protective order issued by the trial court is interlocutory and is not appealable at this time under the applicable supreme court rules. Berle argues that the order is tantamount to an injunction and is therefore immediately appealable under Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)). In support of this argument, he cites *In re Marriage of Lombaer* (1990), 200 Ill. App. 3d 712, in which the Appellate Court for the First District held that a protective order under the Act which prohibited a party from entering the marital residence was appealable under Rule 307(a)(1).

In arguing that the protective order is not appealable at this point, Barbara relies upon cases in which it has been held that the questions of child custody, child support, property division, and whether the marriage should be dissolved are not separate claims but instead are ancillary parts of a single claim for dissolution; therefore, an order resolving one of these issues is not appealable until all issues in the case have been resolved. (*In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 119-20; *In re Marriage of Ryan* (1989), 188 Ill. App. 3d 679, 681.) The court noted in *Leopando* that a close interrelationship exists among the above issues in a dissolution proceedings. *Leopando*, 96 Ill. 2d at 119.

Two of the above matters are inherent issues in any marital dissolution proceedings; the other two are present in any such proceeding involving children. A request for an order of protection pursuant to the Act is not an inherent part of a marital dissolution proceeding, however, nor is it a matter which arises exclusively in such a proceeding. Under section 202(a) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 2312—2(a)), petitions for orders of protection may also be filed in conjunction with other civil proceedings, in connection with criminal pro-

ceedings, or independently, as Barbara originally did in this case. Thus, it is apparent that a petition for a protective order in a marital dissolution case is a separate claim and is not an ancillary part of the claim for dissolution. *Leopando* and *Ryan* are therefore inapposite.

A reviewing court will examine the substance of an order rather than its form to determine if it constitutes an appealable injunction. (*In re a Minor* (1989), 127 Ill. 2d 247, 260.) One definition of the word "injunction" is a " 'judicial process operating in personam and requiring [a] person to whom it is directed to do or refrain from doing a particular thing.' " (*In re a Minor*, 127 Ill. 2d at 261, quoting Black's Law Dictionary 705 (5th ed. 1983).) Since the order from which Berle appeals directs him to refrain from entering the Highland Park residence, it fits within the above definition.

Even if an order fits within the above definition, however, it will not be considered appealable under Rule 307(a)(1) if it is an administrative order which operates solely to regulate the procedural details of litigation before the court. (127 Ill. 2d at 262.) Thus, discovery orders are not immediately appealable interlocutory orders. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171.) Orders such as these are distinguishable from traditional forms of injunctive relief because they do not affect the relations of the parties in their daily activities outside the litigation. *In re a Minor*, 127 Ill. 2d at 260.

The order in question clearly affects the parties in their everyday activities apart from the lawsuit since it prevents Berle from entering a residence in which he has an ownership interest and provides Barbara with exclusive possession of the residence. The order is therefore an injunction within the meaning of Rule 307(a)(1) and is immediately appealable. Barbara's motion to dismiss the appeal is denied.

We now turn to the merits. Berle argues that, in light of the trial court's finding that he did not physically abuse Barbara, it was error for the court to issue an order of protection excluding him from the marital residence in Highland Park. Under section 214(a) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 2312—14(a)), if the trial court finds that the petitioner has been abused, neglected, or exploited, the court must enter an order of protection prohibiting such abuse, neglect, or exploitation. The term "abuse" is defined to include harassment. (Ill. Rev. Stat. 1989, ch. 40, par. 2311—3(1).) The term "harassment" is defined as "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner." (Ill. Rev. Stat. 1989, ch. 40, par.

2311—3(6).) Harassment is the result of intentional acts which cause another person to be worried, anxious, or uncomfortable. (*People v. Zarebski* (1989), 186 Ill. App. 3d 285, 294 (appeal from conviction of violation of order of protection issued pursuant to Act).) Harassment can therefore occur even if there is no overt act of violence. *Zarebski*, 186 Ill. App. 3d at 294.

■ The trial judge found that Berle harassed Barbara, relying primarily upon the fact that he pulled three telephone cords from the walls while Barbara tried to call the police. Since, according to the Act, abuse includes harassment, this means the court found that Berle abused her. The trial court has broad discretion in considering whether abuse occurred under the Act; the court should assess the credibility of the witnesses, the conduct described, and the tension between or among household members. (*In re Marriage of Hagaman* (1984), 123 Ill. App. 3d 549, 554.) The trial court did not abuse that discretion in the case at bar.

Although Berle testified that he only removed two telephone cords from the wall, Barbara testified that he removed three, and Officer Gilbert stated that Berle had admitted removing three. The evidence reveals that Berle pulled the bedroom cord out so violently that he either knocked over the nightstand or caused himself to fall into the nightstand and knock it over. Such conduct would clearly cause emotional distress to one attempting to use the phones. Berle's testimony that Barbara remained calm throughout the March 29 incident is belied by his own further testimony that she was screaming at him and running throughout the house.

■ Berle argues that he removed the phone cords for a proper purpose, to prevent the police from coming over and disturbing the couple's son, David. The trial court could reasonably have determined, however, that attempting to prevent a party to a domestic dispute from calling the police over to calm the dispute is not a proper purpose. According to the evidence, Berle also physically prevented Barbara from leaving the sitting room for a few minutes by blocking the door. The trial court mentioned this in determining a risk of future abuse existed. Berle had no right to stop Barbara from telephoning the police if she desired to do so, and the extreme measures he took in an effort to stop her from doing this were not justified by his alleged desire to prevent his son from waking up and being disturbed, which occurred anyway. The trial court's finding that Berle harassed Barbara was not an abuse of discretion.

■ Under section 214(b)(2) of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 2312—14(b)(2)), the petitioner may be granted exclusive posses-

sion of the residence if petitioner has a right to occupancy. If respondent also has the right to occupancy, there must also be a risk of future abuse which interferes with petitioner's safe and peaceful occupancy and the balance of hardships favors petitioner's possession. The balance of hardships favors petitioner's possession unless the hardships to respondent and any dependent in respondent's care substantially outweigh the hardships to petitioner and any dependent in petitioner's care from continued risk of abuse if petitioner remains or loss of possession should petitioner leave to avoid potential further abuse. Ill. Rev. Stat. 1989, ch. 40, par. 2312—14(b)(2).

■■ ■ The trial court's finding that a risk of future abuse existed was not an abuse of discretion. Although the trial judge found that no physical abuse had taken place, Berle's actions were still violent and could easily have led to physical violence between the couple. The Act is to be construed liberally to protect victims of domestic violence, help them avoid further abuse, and to expand the remedies for victims of domestic violence including, when necessary, physical separation of the parties. See Ill. Rev. Stat. 1989, ch. 40, pars. 2311—2(4), (6).

Although Berle argues that a lesser remedy, such as ordering him to sleep in a separate bedroom, should have been used, the trial judge could have reasonably determined in light of the tension between the parties and Berle's violent conduct on March 29 that one of them would have to leave the home to prevent potential future violence. In a case of this nature, the trial judge is clearly in the best position to determine the appropriate remedy since the trial judge is present when the witnesses, including the parties, testify and is therefore in a superior position to assess not only the credibility of the parties but the degree of animosity existing between them. Therefore, the trial judge has broad discretion in determining the appropriate remedy under the Act, and there was no abuse of that discretion here. It is obvious from the evidence concerning financial circumstances that Berle was in a much better position to leave and find a new residence than Barbara was. The trial court's order was entirely consistent with the Act's purpose of preventing future abuse.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

REINHARD, P.J., and BOWMAN, J., concur.