In re T.H. et al., Minors (The People of the State of Illinois, Petitioner-Appellee, v. L.S., Respondent-Appellant).

First District (4th Division) No. 1—02—2806

Opinion filed November 24, 2004.

Rhonda L. Casady, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Nancy Kisicki, and Colleen M. Nevin, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert and Kass A. Plain, of counsel), guardian *ad litem*.

JUSTICE GREIMAN delivered the opinion of the court:

This is an appeal from a two-year plenary order of protection entered by the trial court against respondent-appellant mother, L.S., and in favor of the child T.H. No questions are raised on the pleadings, and for the reasons that follow, we affirm.

T.H., the child at issue in the underlying juvenile court proceedings, was born on August 7, 1991. She was first taken into custody in December of 1997, when respondent was arrested for battery, possession of drug paraphernalia, disorderly conduct, and resisting arrest. On October 10, 1998, T.H. was found to be abused and neglected pursuant to sections 2—3(1)(a), 2—3(1)(b), and 2—3(2)(ii) of the Juvenile Court Act of 1987 (705 ILCS 405/2—3(1)(a), (1)(b), (2)(ii) (West 1998)) for lack of care, injurious environment, and substantial risk of serious injury, respectively. Thereafter, on July 25, 1999, the trial court granted respondent unsupervised day visits with T.H. On that same date, T.H. was adjudged a ward of the court and was placed in the custody of the Department of Children and Family Services (DCFS).

On September 3, 1999, the trial court granted respondent unsupervised overnight visits with T.H. and, on March 21, 2000, ordered that T.H. should be returned to respondent's custody. In connection with T.H.'s return to her mother's custody, the trial court also entered an order of protection on that date which imposed a number of conditions, such as drug testing and sex abuse counseling for T.H. However, on July 19, 2000, a child protection warrant was issued for T.H. after she was taken from the State of Illinois without the permission of the court and in violation of the order of protection. Again, T.H. was placed in the custody of DCFS after the court determined

that it was in her best interest to do so. On September 29, 2000, the trial court entered a permanency order, where the court noted that respondent needed a drug assessment and a psychological evaluation. Subsequently, respondent failed to appear for the psychological evaluation and did not complete the drug assessment. In addition, she was inconsistent in keeping scheduled visits with her children and tested positive for cocaine.

In February of 2001, T.H. was classified as a "SACY" (Sexual Aggressive Children and Youth) ward, following an incident in which she fondled her younger foster brother, performed oral sex on him, and encouraged her sister and foster brother—ages three and four, respectively—to engage in sexual activity. According to DCFS reports, respondent previously had involved T.H. in various acts of prostitution to the point where she was "exposed to a great deal of sexually explicit activities while living in various hotel rooms with [respondent]." Additionally, T.H. was sexually victimized by a male cousin while in the respondent's care.

In May of 2001, T.H. was referred to the Human Effective Living Program (HELP) for sexual aggression assessment and treatment. In October of 2001, the State filed a supplemental petition for appointment of a guardian with the right to consent to adoption seeking to terminate respondent's parental rights. On January 15, 2002, T.H.'s attorney filed a motion to suspend visitation. The motion alleged that T.H. told her sex abuse therapist that her mother had T.H. perform oral sex on men for money. T.H.'s sister, K.M., also told the therapist she saw T.H. perform oral sex on men.

A January 7, 2002, evaluation from Sandra Christman, of HELP, provided further evidence of such behavior:

> "T.H. gave additional information that not only was she taught to steal food and beg for money but that she was sexually exploited by her mother. T.H. stated that her mother would take her to 'be with a man.' T.H. says of the men, 'they knew my mama. I'd have to take my clothes off and let them touch me ***.' T.H. stated that she had to touch these men and 'my mama got the money.' When asked about how she felt about these events, T.H. stated, 'They didn't hear my crying. I have mad feelings toward my mom. I was scared, I didn't want to do this.' "

The report also recommended that supervised visitation between T.H. and her mother be stopped.

On January 17, 2002, the trial court suspended supervised visitation between T.H. and her mother until further order of court. Also on that date, a DCFS report was admitted that indicated that while T.H. was in her mother's custody, her mother involved her in prostitution.

The report then went on to state that T.H. was traumatized by contact with her mother. Shortly thereafter, on January 31, 2002, the trial court terminated all visitation between respondent and T.H. and K.M., finding that "suspension of visits between the minors and the natural mother is in the best interests of the minors."

On July 19, 2002, the trial court heard evidence on T.H.'s motion for an emergency domestic violence order of protection and a motion to vacate the visitation order. In that regard, Christman testified that on July 1, 2002, the respondent came to the HELP facility with a person who was described as respondent's "advocate" and requested T.H.'s therapy reports, and she was told that she could not get them. Thereafter, at the same time respondent left the HELP facility through the front door, T.H. was being dropped off for her therapy session. Respondent then approached T.H. and told her that she loved her, she kissed her, and told her that she was skinny. Respondent's "advocate" then told T.H. that she was going to be returned to her mother's custody. Christman testified that immediately after the incident, T.H. looked shocked, began shaking her head, and stated that she did not want to go back. Christman opined that the incident was very traumatic for T.H. and continues to be so, as T.H. has brought up the incident in subsequent therapy sessions.

Stacy Boyland, the secretary at HELP, also testified. She stated that prior to July 1, 2002, respondent had appeared at HELP and had been told that only DCFS and the guardian had authority to release T.H.'s records and, therefore, that HELP could not release the records to the respondent. However, Boyland testified that even though respondent had been told that she would not be given T.H.'s records, respondent appeared again on July 1, 2002. That day, when Boyland received a call from the transportation agency to go downstairs and pick up T.H. from the transportation agency, she did so and encountered respondent, who again claimed she was on her way upstairs to request records. However, as Boyland exited the building to get T.H., respondent and her "advocate" followed her out the door and approached T.H. According to Boyland, respondent exclaimed, "There is my baby, there's my T.H." Respondent's "advocate" then told T.H., "I am working with your mommy now, she loves you, she is going to get you all back home." Boyland then told respondent that she and T.H. had to go inside the building, and she took T.H. upstairs.

Caseworker Alfreda Hartzol then testified that she had been T.H.'s caseworker since July of 2000. She noted that DCFS had determined that respondent was not entitled to T.H.'s mental health records because turning over those records would be detrimental to the "therapeutic relationship of trust." To that end, Hartzol sent a letter

to respondent informing her not to return to HELP, which respondent received at the latest by July 8, 2002. Nevertheless, respondent returned to HELP on July 9 and 10, 2002. Hartzol also testified that she contacted the transportation agency that takes T.H. to and from her therapy appointments. Personnel who worked for the company told her that they would not take her to therapy because they did not want to be liable if a similar incident happened again. However, Hartzol noted, the transportation company agreed that it would transport T.H. if it had a court order that would allow it to call the police if respondent was again present. Hartzol stated that a domestic violence order of protection would be in T.H.'s best interest.

Respondent then testified that she had been to the HELP office on June 27, 2002, June 28, 2002, and July 1, 2002, all in the effort to obtain T.H.'s mental health records. However, respondent claimed that she did not know that T.H. would be present on July 1, 2002, and that what occurred was simply a "chance encounter." Respondent's "advocate," Toni Stith, also testified that she had no idea that T.H. was coming there. Nevertheless, respondent's counsel admitted that by speaking to T.H., respondent may have violated the court order.

The trial court concluded that respondent violated the January 31, 2002, court order by having direct contact with T.H. Accordingly, the court entered an interim domestic violence order of protection and stated:

> "And I certainly don't buy this idea that you were just going back to just check for records. After being told specifically that you were not going to get them, you went back on two separate occasions."

The interim order of protection was entered on July 19, 2002, and remained in effect until August 15, 2002.

Thereafter, on August 15, 2002, the trial court heard testimony on T.H.'s petition for a plenary domestic violence order of protection. Again, Christman, Boyland, and Hartzol all testified to the same sequence of events of July 1, 2002, as they had testified in the previous hearing for the interim order of protection. Respondent's counsel argued that the protective order was not necessary because "[respondent] now understands how the process works and how she is to get records if she needs records." In response, the public guardian argued that the plenary order was essential because any future violation of the orders previously entered could only be resolved by returning to court, whereas the domestic violence order of protection allows for police intervention when necessary.

The trial court then noted the July 19, 2002, interim domestic violence order of protection and the transcript from the July hearing. After the court considered that testimony, as well as the testimony of

the three witnesses, it entered the plenary domestic violence order of protection and ordered that respondent was prohibited from committing physical abuse or harassment. Furthermore, the court ordered respondent to stay away from T.H. and prohibited her from entering or remaining at HELP while T.H. was present. In addition, the court denied respondent access to T.H.'s records as well as any contact with T.H.'s transportation company. In the end, the court concluded that, based on all the evidence before it, the order of protection was in T.H.'s best interest.

On September 5, 2002, respondent filed a notice of appeal regarding the August 15, 2002, plenary order of protection only, contending that the trial court abused its discretion in entering the order because the record contained no evidence of abuse or harassment and because the court entered the order without making specific findings. The State initially responds that this court is without jurisdiction to hear this appeal. In respondent's appellate brief, she states that we have jurisdiction to consider her appeal on five separate grounds: (1) article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6); (2) Illinois Supreme Court Rule 304(b) (155 Ill. 2d R. 304(b)); (3) Illinois Supreme Court Rule 307 (210 Ill. 2d R. 307); (4) Illinois Supreme Court Rule 660(b) (210 Ill. 2d R. 660(b)); and (5) Illinois Supreme Court Rule 663 (210 Ill. 2d R. 663). However, the State argues that because all of the foregoing are either inapplicable or premature, this appeal must be dismissed.

In general, parties may appeal any final judgment to a reviewing court. Ill. Const. 1970, art. VI, § 6. A judgment is final for purposes of appeal where it absolutely and finally fixes the rights of the parties involved in a lawsuit and the only matter that remains to be resolved is the execution of the judgment. *P&A Floor Co. v. Burch*, 289 Ill. App. 3d 81, 87 (1997). Further, an order is final where matters left for future determination are merely incidental to the ultimate rights that have been adjudicated. *Shermach v. Brunory*, 333 Ill. App. 3d 313, 317 (2002).

The State argues that the plenary order of protection is not a final judgment because it merely protects T.H. from further trauma during the course of the ongoing juvenile proceedings and does not resolve the parties' rights or any other issue involved in the proceedings below. However, this court has held that a protective order is a claim separate from and not ancillary to its related proceedings and may be appealed as a judgment in and of itself. See *In re Marriage of Blitstein*, 212 Ill. App. 3d 124, 129-30 (1991). Furthermore, the public guardian concurs

with respondent and argues that this court has jurisdiction to review the plenary order of protection as an injunction pursuant to Supreme Court Rule 307(a)(1). We agree.

■ Supreme Court Rule 307(a)(1) provides that a party may take an appeal of an interlocutory order granting, modifying, refusing, dissolving, or refusing to dissolve an injunction within 30 days of its entry. 210 Ill. 2d R. 307(a)(1). In order to determine whether an injunctive order is appealable under Rule 307(a)(1), we examine the substance of the order. *In re A Minor*, 127 Ill. 2d 247, 260 (1989). For purposes of Rule 307(a)(1), an injunction is defined as "a 'judicial process operating in personam and requiring [a] person to whom it is directed to do or refrain from doing a particular thing.' " *In re A Minor*, 127 Ill. 2d at 261, quoting Black's Law Dictionary 705 (5th ed. 1983). An order of protection is injunctive in substance because it directs a person to refrain from doing something, such as entering the residence of another person (*In re Marriage of Fischer*, 228 Ill. App. 3d 482, 486-87 (1992)), and affects the parties in their everyday activities apart from the lawsuit (*In re Marriage of Blitstein*, 212 Ill. App. 3d at 130).

■ An injunctive order may not be appealable under supreme court rules if it is ministerial or administrative in that it regulates only the procedural details of litigation and therefore cannot be the subject of an interlocutory appeal. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 359 n.1 (2002). Such orders may be considered noninjunctive because they do not derive from a court's traditional powers of equity but instead from the court's power to compel witnesses to appear and give testimony. *People v. Reynolds*, 274 Ill. App. 3d 696, 700 (1995) (Hoffman, J., dissenting). They do not affect the rights or relationships of the parties in their everyday activities apart from the litigation and are distinguishable from traditional forms of injunctive relief. *Hamilton v. Williams*, 237 Ill. App. 3d 765, 778 (1992).

The State relies on this court's decision in *In re Johnny S.*, 219 Ill. App. 3d 420 (1991), in contending that the order of protection does not constitute an injunction and is therefore not appealable. In that case, three minors appealed from an order of the circuit court which allowed the children to remain with their father pending a final custody determination. The order was entered at a temporary custody hearing held pursuant to the Juvenile Court Act (705 ILCS 405/1—1 *et seq.* (West 2002)), and we concluded that it was an interim decision which left the parties' status intact and did not rise to the level of an injunctive order. *In re Johnny S.*, 219 Ill. App. 3d at 422. We find the proceedings and facts in this case distinguishable.

■ In this case, the initial emergency order of protection and the ensuing plenary order were entered pursuant to section 202(a)(2)(ii) of the Illinois Domestic Violence Act of 1986, in conjunction with proceedings to terminate the respondent's parental rights and to appoint a guardian with the right to consent to adoption. 750 ILCS 60/102(4), 202(a)(2)(ii) (West 2002). The order compelled respondent to stay away from T.H. and to refrain from physically abusing and harassing her, from going to HELP's offices, and from contacting anyone at the transportation company for a definite duration of two years. By contrast, in *In re Johnny S.*, the respondent was not compelled to do anything and the order maintained the status quo pending the outcome of a temporary custody hearing. Accordingly, we conclude that the plenary order of protection is injunctive in substance rather than administrative and as such is an appealable final order. We therefore find that this court has jurisdiction to consider this appeal.

The State also contends that the issues respondent raises on appeal are moot because the fitness and termination proceedings still pending before the trial court will either extinguish or maintain the respondent's rights concerning T.H. It is also worth noting that, as of this writing, the order of protection as entered on August 15, 2002, has since expired. However, the order's expiration and the resolution of its related proceedings do not necessarily render the propriety of the trial court's judgment a nullity.

■ In general, an issue is moot if events occurring after the filing of the appeal make it impossible for a reviewing court to grant effective relief. *Lutz v. Lutz*, 313 Ill. App. 3d 286, 288 (2000). However, courts may review an otherwise moot issue if it involves a question of great public concern. *In re R.V.*, 288 Ill. App. 3d 860, 865 (1997). This exception applies when an otherwise moot question is nonetheless (1) public in nature, (2) desirous of an authoritative determination for future guidance, and (3) likely to recur. *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003).

■ In this case, the interests involved are of public concern. The Domestic Violence Act deals with grave societal problems and it is of public interest that its aims be achieved. 750 ILCS 60/217(a)(3) (West 2002). The provision's purposes can only be carried out if courts properly apply its requirements. Given the public interest in protecting the victims of domestic violence, and the likelihood that questions involving domestic violence are likely to recur, this court has repeatedly found it desirable to clarify and provide an authoritative determination of what the Domestic Violence Act requires prior to the issuance of a plenary order of protection, even where said order has already expired. See *Whitten v. Whitten*, 292 Ill. App. 3d 780, 784-85

(1997); *Lutz*, 313 Ill. App. 3d at 288. We see no reason to diverge from that line of reasoning here, and now proceed to address the merits of respondent's appeal.

Respondent contends on appeal that the trial court erred in entering the plenary order of protection because (1) the record contained no evidence of abuse, (2) the record contained no evidence of harassment, and (3) the court entered the order without making any specific findings.

A trial court's entry of an order of protection will not be overturned absent a clear abuse of discretion. *Lutz*, 313 Ill. App. 3d at 289. An abuse of discretion occurs when no reasonable person would take the view adopted by the court. *Wilson v. Jackson*, 312 Ill. App. 3d 1156, 1165 (2000).

The Domestic Violence Act provides that protective orders may be entered against persons who have abused a minor child in their care. 750 ILCS 60/201(b)(i) (West 2002). The definition of "abuse" includes physical abuse, harassment, or intimidation of a minor child. 750 ILCS 60/103(1) (West 2002). Physical abuse includes sexual abuse as well as "knowing or reckless conduct which creates an immediate risk of physical harm." 750 ILCS 60/103(14)(iii) (West 2002).

■ Respondent argues that there was no evidence before the trial court that her conduct toward T.H. was knowing or reckless or created a risk of physical harm, nor any evidence that she used physical force against T.H. or restrained her. She seems to limit her argument to the encounter that occurred on July 1, 2002, disregarding the events and allegations that led to T.H.'s initial removal from her custody and the ensuing proceedings. On the record before us, we find that the trial court did not abuse its discretion in issuing the plenary order of protection. The trial court had several undisputed reports before it detailing the activities respondent would have T.H. perform on strange men. Respondent would also have the child beg for money and steal food. Such activities obviously constitute sexual abuse, even if respondent was not the direct perpetrator, as well as activities that created an immediate risk of physical harm. We believe that any reasonable person could conclude that respondent's treatment of T.H. was "abuse."

Respondent next contends that the trial court abused its discretion in entering the order of protection because the record contained no evidence of harassment. The Domestic Violence Act defines "harassment" as "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress" to the child seeking protection. 750 ILCS 60/103(7) (West 2002).

Respondent argues that her contact with T.H. on July 1, 2002, was necessary to reassure T.H. and that it would not cause a reasonable person emotional distress. Based on all the evidence presented to the trial court by way of witness testimony and caseworker reports, T.H. never sought any reassurance from the respondent. She had expressed anger toward the respondent in caseworker observations, and several witnesses testified that she was visibly shaken and afraid after the July 1 encounter. Given respondent's treatment of T.H. throughout her young life, we cannot conclude that her reaction to respondent's advances was unreasonable. Finally, there is ample evidence in the record that the encounter did indeed cause T.H. emotional distress. Accordingly, we conclude that there was sufficient evidence to support the trial court's order to respondent not to harass T.H.

Lastly, respondent contends that the trial court abused its discretion by entering the order of protection without making any specific findings that the respondent's actions, unless prohibited, would likely cause irreparable harm or continued abuse, and that it was necessary to grant the order to protect T.H. Both the State and the public guardian counter that respondent has waived this issue for purposes of appeal and that the trial court complied with the requirements of the Domestic Violence Act in issuing the order of protection. We agree.

An appellant waives a claim of failure to make factual findings when she neglects to object to an order during the hearing at which it is issued. See *In re K.S.*, 317 Ill. App. 3d 830, 833 (2000); *In re M.M.*, 337 Ill. App. 3d 764, 778 (2003). Respondent never objected to the entry of the order and therefore has waived this contention for purposes of review. Even if the issue had been properly preserved, we would find that it lacks merit.

Section 214(c)(3) of the Domestic Violence Act requires that the trial court shall make findings in the official record or in writing and set forth: (1) that the court considered the factors listed in sections 214(c)(1) and 214(c)(2) (750 ILCS 60/214(c)(1), (c)(2) (West 2002)); (2) that the respondent's conduct will likely cause continued abuse if not prohibited; and (3) that it is necessary to grant the requested relief to protect the allegedly abused person. 750 ILCS 60/214 (c)(3)(i) through (c)(3)(iii) (West 2002); *Mowen v. Holland*, 336 Ill. App. 3d 368, 375-76 (2003). Among the factors the trial court is to consider in determining whether to issue a protective order are the nature, frequency, severity, pattern, and consequences of the respondent's past abuse and the likelihood of future abuse, and the danger that the minor will be improperly removed from the jurisdiction, concealed, or separated from the primary caretaker. 750 ILCS 60/214(c)(1)(i), (c)(1)(ii) (West 2002).

The plenary order of protection issued in this case specifically states that its mandate is based on the trial court's findings "which were made orally for transcription, or which are set out in a separate instrument filed with the court." The court had made findings in its previous orders suspending respondent's visitation rights that it was in T.H.'s best interest that visits be suspended based on reports that respondent had involved her in prostitution. The court also found respondent in violation of those orders and heard the testimony regarding the July 1, 2002, incident when it issued the interim order of protection. The court took judicial notice of its previous visitation orders, the interim order of protection, and the termination petition at the hearing on the plenary order of protection. The court also heard testimony from several witnesses detailing respondent's conduct toward T.H. and indicating that a plenary order of protection was necessary in order to protect her. Finally, the court made an explicit oral finding that the grant of the petition for the order of protection was in T.H.'s best interest.

Under these circumstances, we decline to remand this cause solely for the purpose of allowing the trial court to reiterate its findings in a written order. See *In re K.S.*, 317 Ill. App. 3d at 834; *In re Z.Z.*, 312 Ill. App. 3d 800, 804 (2000).

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

REID, P.J., and QUINN, J., concur.